Shirley J. COULSON, Appellant,

v.

MARSH & McLENNAN, INC., Charles Anderson, Jackie Brunton, and Anderson–Brunton Insurance Brokers, Inc., Appellees.

Marsh & McLennan, Inc., Cross–appellant,

v.

Shirley J. Coulson, Cross–Appellee.

Nos. S–7888, S–7998.

Supreme Court of Alaska.

Feb. 26, 1999.

**35.** *Id.*

**36.** *Ramsey v. City of Sand Point,* 936 P.2d 126, 133 (Alaska 1997).

Jody Patrick Brion, Leutwyler, Brion & Associates, Anchorage, for Shirley J. Coulson.

Amy R. Menard, Gilmore & Doherty, Anchorage, for Marsh & McLennan, Inc. Laura L. Farley, Le Gros, Buchanan & Paul, Anchorage, for Charles Anderson, Jackie Brunton, and Anderson–Brunton Insurance Brokers, Inc.

Before MATTHEWS, Chief Justice, and COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Marsh and McLennan, Inc. (MMI) sold its "book of business" to Anderson–Brunton Insurance Brokers, Inc. (ABIB). ABIB offered employment to MMI employee Shirley Coulson, but she declined the offer. Alleging that personal property was taken from her office after she declined ABIB's offer, Coulson sued MMI and ABIB. Her claims were resolved against her by partial summary judgments, a directed verdict, and jury verdicts. Because Coulson has not shown that it was error to grant summary judgment to defendants or that any alleged error prejudiced her, we affirm on all issues she raises

in her appeal. On MMI's cross-appeal, we vacate the attorney's fees award and remand.

## II. *FACTS AND PROCEEDINGS*

MMI is a national insurance brokerage firm that had an office in Anchorage. It employed Shirley Coulson as an insurance account executive in its Anchorage office. When MMI sold its book of business to ABIB in 1992, ABIB took over MMI's Anchorage office space. ABIB offered employment to Coulson, who declined the offer on May 4, 1992. Immediately after she declined the offer, ABIB asked her to leave the office; Coulson was to return later for her personal property. Coulson claimed that when she returned several days later to clean out her office and desk, she discovered that some of her personal files and her insurance reference materials were missing. She informed Charles Anderson, an ABIB owner, that an important file marked "Shirley" was not in her office. ABIB retrieved this file and returned it to her. No other materials were returned to her.

Coulson sued MMI, ABIB, and ABIB's principals, alleging: invasion of privacy, conversion, negligent infliction of emotional distress (NIED), intentional infliction of emotional distress (IIED), intentional interference with prospective economic advantage, breach of the implied covenant of good faith and fair dealing, employment discrimination, and negligence. She sought an order directing the defendants to return her files and personal effects, monetary damages exceeding $50,000 for her common law claims, punitive damages, and attorney's fees and costs.

The superior court granted summary judgment to ABIB on Coulson's claims of IIED, intentional interference with prospective economic advantage, and breach of the implied covenant of good faith and fair dealing; and on the issue of punitive damages. The court granted ABIB summary judgment on Coulson's NIED claim, but reinstated the claim on reconsideration. The court also granted summary judgment to MMI on all claims except negligence.

A jury trial was then conducted on Coulson's invasion of privacy, conversion, negli-gence, and NIED claims against ABIB, and on Coulson's negligence claim against MMI. When Coulson concluded her case in chief, the superior court granted MMI a directed verdict on Coulson's negligence claim. The court submitted Coulson's claims against ABIB to the jury, which returned special verdicts for ABIB on each claim.

Coulson appeals.

## III. *DISCUSSION*

### A. *"In Camera" and Discovery Issues*

In January 1995 Coulson moved to compel production of documents which ABIB had objected to producing in discovery. She also asked the court to compel MMI to produce an unredacted copy of the purchase agreement. Defendants opposed her motions and ABIB moved for a protective order. The superior court ordered in camera review of the documents. They consisted of documents written by officers of ABIB concerning the employment status of MMI employees, copies of ABIB corporate records, and related documents. They include an unredacted copy of the MMI–ABIB sales agreement. The superior court never stated specifically whether the documents submitted for in camera review had to be produced. Nor did the court state whether it had reviewed the documents before it granted partial summary judgment to ABIB and MMI.

Coulson argues on appeal that the superior court failed to consider the in camera evidence before granting partial summary judgment to ABIB. She also claims the court failed to review the documents within pertinent time limits. Finally, she argues that it was error not to compel production of unredacted copies of corporate records and the MMI–ABIB purchase agreement. The confidential appellate excerpt contains the documents produced for in camera review, and apparently includes the documents which were the subject of Coulson's motion to compel.

Whether to conduct an in camera examination of documents lies within the dis-

cretion of the trial court.[1] We review the denial of a motion to compel discovery for abuse of discretion.[2] We generally review discovery orders under the deferential abuse of discretion standard, but we apply our independent judgment in deciding whether the trial court weighed the appropriate factors, because that is a legal question.[3]

### 1. Waiver of issue

We first reject appellees' argument that, by failing to demand a ruling before proceeding to trial, Coulson waived a claim that the superior court failed to rule on her motion to compel. Coulson preserved the issue by requesting a ruling on her motion on three occasions: in her December 1995 opposition to ABIB's summary judgment motion, at the May 1996 oral argument, and in her June 24, 1996, reconsideration motion.

### 2. Harmless error

To prevail on appeal, Coulson must show that the alleged errors had a substantial influence on the outcome of the case.[4] If not, any error is deemed harmless and we must affirm.[5]

 We note preliminarily that trial courts should enter express rulings on motions to compel. They should also indicate whether they have reviewed documents supplied in camera and whether they have relied on them in ruling on motions. Failure to do so can cause needless and avoidable confusion on appeal about what happened in the trial court, and may require remand, if not reversal. But given the circumstances here,

we conclude that any possible error was harmless.

Coulson has only generally alleged on appeal how the documents might be pertinent. She asserts they could have helped establish that she was treated worse than other MMI employees who were offered severance pay; could have substantiated her implied covenant and negligence claims against MMI in the handling of the closing of the office; could have shed light on how Charles Anderson defined "proprietary"; and could have indicated whether ABIB had an ongoing relationship with MMI and was MMI's agent with respect to taking Coulson's property.

Having reviewed the documents submitted in camera, we conclude that they shed no light on any of these issues except, perhaps, the question of whether ABIB was MMI's agent for any purpose. We nonetheless assume for the sake of discussion that the documents might have been relevant to those issues, as Coulson argues. She claims the documents could have helped her defeat ABIB's summary judgment motion.[6] But the jury verdict and MMI's partial summary judgment rendered any possible error harmless.

 First, any error was harmless as to Coulson's claims against MMI. The superior court granted summary judgment to MMI on Coulson's claims for invasion of privacy, conversion, NIED, and IIED, reasoning that ABIB was not MMI's agent. Ultimately, ABIB itself was found not liable for these torts.[7] Excepting special circumstances,[8] if

---

1. See Capital Info. Group v. State, Office of Governor, 923 P.2d 29, 37 n. 5 (Alaska 1996).

2. See Stone v. International Marine Carriers, Inc., 918 P.2d 551, 554 (Alaska 1996) (citing R.E. v. State, 878 P.2d 1341, 1345 (Alaska 1994)).

3. See In re Mendel, 897 P.2d 68, 72 n. 7 (Alaska 1995).

4. See Myers v. Robertson, 891 P.2d 199, 207–08 (Alaska 1995).

5. See Veal v. Newlin, Inc., 367 P.2d 155, 157 n. 8 (Alaska 1961) ("Harmless error must be disregarded."); see also Alaska R. Civ. P. 61.

6. We note that there was no argument in the superior court that would have required the su-

perior court to grant Coulson's motion to compel and to order the documents produced unredacted.

7. The court granted summary judgment to ABIB on the IIED and punitive damages claims. The jury returned a verdict in favor of ABIB on the claims of invasion of privacy, conversion, negligence, and NIED.

8. See, e.g., Restatement (Second) of Agency § 212 cmt. c (1958) ("The master may be liable although the actor is not liable. This is true in those cases in which liability is based upon knowledge of facts which the master has but which the servant does not have.").

the acts of an agent do not make the agent liable, the principal cannot be liable for the acts of the agent either.[9] Coulson has articulated no special circumstances and no theory by which MMI could be liable for non-tortious acts of ABIB. Accordingly, any evidence supporting the contention that ABIB was an agent of MMI is immaterial to Coulson's tort claims.

■ Second, any possible error was harmless as to Coulson's claims against ABIB. The documents were irrelevant to her implied covenant claim against ABIB because Coulson had no contract with ABIB; she therefore had no implied covenant claim against ABIB.[10] ABIB's alleged agency relationship with MMI was also irrelevant to an implied covenant claim against ABIB, because even if it was MMI's agent, ABIB owed Coulson no duties under an implied covenant.

Moreover, any claim that ABIB as agent of MMI was liable to Coulson for breach of the implied covenant of good faith and fair dealing could succeed only if there was in fact a breach of that covenant. The superior court granted summary judgment to MMI because there was no breach of the covenant. For reasons discussed in Part III.C.1, the superior court did not err in granting summary judgment to MMI on that claim. Because there was no breach of the implied covenant of good faith and fair dealing, any error in failing to compel production of documents bearing on agency did not prejudice Coulson.

Since Coulson's agency-based claims would have failed on their merits even if the documents had been produced unredacted, any error was harmless. Because we dispose of

the in camera issue on harmless error grounds, we need not consider the other arguments proffered by MMI and ABIB in support of affirmance, or Coulson's argument that a failure to conduct in camera review requires reversal. We therefore affirm on all issues relating to the in camera evidence and Coulson's motion to compel.

### 3. Rule 56(f) continuance

■ Alaska Civil Rule 56(f) allows a party opposing summary judgment to seek additional time to gather and submit evidence to justify the party's opposition.[11] Coulson argues that the superior court erred by entering partial summary judgment for MMI and ABIB without ordering a Rule 56(f) continuance.[12] She claims that she was entitled to a Rule 56(f) continuance because the superior court had not ruled on her motion to compel when MMI and ABIB sought summary judgment.

Any possible error in failing to grant a continuance was harmless. Coulson would not have prevailed even if the documents submitted in camera had been produced to her. *See supra,* Part III.A.2.

### B. *Agency Issues*

The superior court granted summary judgment to MMI on the ground that ABIB was not MMI's agent. When she moved for reconsideration, Coulson submitted later-found evidence that purported to show that ABIB was MMI's agent. The superior court denied Coulson's reconsideration motion. Coulson argues that it was error to hold that ABIB was not MMI's agent and to deny Coulson's motion for reconsideration. Be-

---

**9.** *Cf.* Restatement (Second) of Agency § 219(1) (1958) ("A master is subject to liability for the torts of his servants committed while acting in the scope of their employment."); *id.* § 215 ("A master or other principal who unintentionally authorizes conduct of a servant or other agent which constitutes a tort to a third person is subject to liability to such person."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 69, at 499–501 (5th ed.1984) (discussing liability of masters for torts committed by servants).

**10.** *See Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 287–88 (Alaska 1980) (stating

that claims supervisor who was not party to insurance contract was not bound by implied covenant of good faith and fair dealing).

**11.** *See* Alaska R. Civ. P. 56(f); *Parson v. Marathon Oil Co.,* 960 P.2d 615, 619 (Alaska 1998); *Gamble v. Northstore Partnership,* 907 P.2d 477, 484–85 (Alaska 1995).

**12.** We review a superior court's decision on whether to permit further discovery under Civil Rule 56(f) for an abuse of discretion. *See Mount Juneau Enters., Inc. v. City of Juneau,* 923 P.2d 768, 773 (Alaska 1996).

cause Coulson's claims would have failed even if ABIB had been MMI's agent, *see supra,* Part III.A.2, any error in granting summary judgment was harmless. We therefore need not determine whether the superior court erred when it ruled that ABIB was not MMI's agent and denied Coulson's reconsideration motion.

### C. *Summary Judgment Issues*

Coulson contends that the superior court erroneously granted partial summary judgment to MMI and ABIB. We consider each of the dismissed claims.[13]

#### 1. *Implied covenant of good faith and fair dealing*

Coulson first argues that it was error to grant summary judgment to ABIB and MMI on Coulson's implied covenant claims, and to focus on the fact that ABIB did not employ Coulson. She asserts that the implied covenant arose in the MMI–ABIB contract of sale, and that she was a named beneficiary of that contract who was entitled to its benefits. She argues that she might have been able to show that she was an intended beneficiary had she been able to see the evidence submitted for in camera review. She apparently theorizes that the MMI–ABIB agreement contemplated that she would receive something more, perhaps severance pay, than a job offer from ABIB.

The agreement required ABIB to offer Coulson full-time employment, but did not specify the terms to be offered. It also stated that "Seller shall be responsible for any severance pay, vacation pay or other benefits such employees may be entitled to under the law or Seller's policies and proce-

dures as set forth in Seller's Employee Handbook." We conclude from the record and the in camera documents that no evidence permitted a reasonable inference that the agreement contemplated that Coulson would receive any benefit other than a job offer.[14] Coulson conceded at her deposition that the Handbook contained no policy or procedure for severance payments to employees, and recognized that no promises or verbal representations were made to her by MMI with regard to severance. Because ABIB offered her employment, she received everything the agreement required. There was consequently no breach of the implied covenant. The superior court correctly granted summary judgment to MMI on this claim.

The superior court granted summary judgment to ABIB on the implied covenant claim because ABIB had never employed Coulson. Because there was no evidence that Coulson was denied any fundamental benefit of the MMI–ABIB agreement, the superior court correctly concluded that there was no breach of the implied covenant. ABIB was therefore entitled to summary judgment on the implied covenant claim for the same reason MMI was.

#### 2. *Intentional infliction of emotional distress*

 Coulson argues that the superior court erroneously granted summary judgment to ABIB and MMI on her IIED claims.[15]

An IIED claim requires evidence that "[t]he offending party, through extreme or outrageous conduct, ... intentionally or

---

**13.** "When reviewing a grant of summary judgment, we independently 'determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts.'" *R.E. v. State,* 878 P.2d 1341, 1345 (Alaska 1994) (quoting *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992)). "In doing so we must draw all reasonable inferences in favor of the non-moving party." *Id.*

**14.** *See Neal & Co. v. Association of Village Council Presidents Reg'l Hous. Auth.,* 895 P.2d 497, 505 (Alaska 1995) (stating that "a third-party right in a contract will not be implied absent

evidence showing that the parties *intended* that at least one purpose of the contract is to benefit the third party").

**15.** Although we review a superior court's grant of summary judgment de novo, the question whether a plaintiff "presented sufficient evidence to support a prima facie case for IIED is a threshold question to which we apply an abuse of discretion standard." *Hawks v. State, Dep't of Pub. Safety,* 908 P.2d 1013, 1015 (Alaska 1995) (citing *Cameron v. Beard,* 864 P.2d 538, 548 (Alaska 1993)).

recklessly cause[d] severe emotional distress or bodily harm to another." [16] A plaintiff must show severe injury, and the superior court must determine as a threshold matter whether the emotional distress is sufficiently severe to submit the claim to the jury.[17]

Coulson testified at her deposition that the loss of the files did not cause her to suffer any embarrassment, humiliation, or economic disadvantage. That concession required dismissal of her IIED claims.

Given the jury's finding that ABIB and its principals did not damage or interfere with Coulson's right to possess the personal property, we also hold that the superior court did not err in concluding that the defendants did not engage in the extreme or outrageous conduct required for IIED.

We therefore affirm on this issue.

### 3. Punitive damages

Coulson argues that the superior court erroneously granted summary judgment to ABIB and MMI on her punitive damages claims. The superior court concluded that Coulson failed to establish the prerequisites for this claim and granted summary judgment to ABIB and MMI.

Because Coulson has failed to prevail on the merits of any of her tort claims, the appropriateness of punitive damages for those claims is a moot question.[18] We therefore affirm on this issue.

### 4. Intentional interference with prospective economic advantage

■■■ Coulson argues that the superior court erred by granting summary judgment to ABIB on her claim of intentional interference with prospective economic advantage. She testified that she lost no clients as a result of the loss of files. The superior court relied on Coulson's testimony to dismiss the claim. Coulson does not dispute this finding

and she does not explain why the superior court erred by granting summary judgment on these grounds. No evidence supported a finding of interference with prospective economic advantage. We therefore affirm on this issue.

### 5. Invasion of privacy, conversion, and negligent infliction of emotional distress

The superior court granted summary judgment in favor of MMI on all of Coulson's claims except negligence, because there was no agency relationship between MMI and ABIB. Coulson contends that summary judgment was inappropriately granted to MMI on the claims of invasion of privacy, conversion, and NIED, because ABIB acted as MMI's agent when her files were allegedly taken.

Coulson's arguments do not warrant reversal. Any error in granting summary judgment to MMI was rendered harmless by the jury's verdict. Because the jury found that ABIB was not liable for these torts, MMI could not be liable for these torts even if ABIB was MMI's agent. See supra, Part III.A.2.

### 6. Employment discrimination

■■■ Coulson contends that it was error to grant summary judgment to MMI on her employment discrimination claim. Relying on federal employment discrimination law, she contends that she "made a prima facie showing that she was treated differently, and worse, than other employees, and demonstrated the specter of impermissible factors playing a role in her employer's decisions."

Coulson did not establish a prima facie case of disparate treatment. She fails to allege that she was treated differently based on her status as a member of a protected class.[19] The superior court granted sum-

---

**16.** Landers v. Municipality of Anchorage, 915 P.2d 614, 619 n. 14 (Alaska 1996).

**17.** See Nome Commercial Co. v. National Bank of Alaska, 948 P.2d 443, 453 (Alaska 1997) (citing Cameron v. Beard, 864 P.2d 538, 548 (Alaska 1993)).

**18.** See Haskins v. Shelden, 558 P.2d 487, 492 (Alaska 1976) (acknowledging the rule that a claim of punitive damages does not broaden the range of actionable wrongs).

**19.** See generally Haroldsen v. Omni Enters., Inc., 901 P.2d 426, 430 (Alaska 1995); Strand v. Petersburg Pub. Sch., 659 P.2d 1218, 1222 n. 7 (Alaska 1983).

mary judgment to MMI because Coulson failed to make a prima facie case even if the facts she alleged were true:

> Assuming for purposes of this motion that Plaintiff was the only employee required to take a 25% cut in pay and was the only employee subject to a three year covenant not to compete, Plaintiff fails to provide a legal basis that such an offer amounted to a legally actionable claim for discrimination.

Coulson's discrimination claim seems to be predicated on the fact that she did not receive severance pay from MMI. MMI has explained why Coulson did not receive severance pay from MMI: only employees who did not receive offers for full-time employment from ABIB were offered severance pay. MMI made the same argument to the superior court in seeking summary judgment, and supported that argument with an affidavit in which Charles Anderson affied that those former MMI employees who were offered employment would not receive severance pay from MMI. The superior court referred to this argument in its order for summary judgment to MMI. Coulson has not demonstrated how MMI's explanation is flawed or why the superior court should not have accepted it.

We therefore affirm on this issue.

### D. *Prior Bad Act Issue*

■■■ At trial, Coulson sought to introduce evidence that Anderson had copied confidential client lists belonging to his previous employer when he left that employment to join MMI. The superior court excluded the evidence because it was prejudicial, irrelevant, lacked probative value, and had "only a speculative connection to conduct alleged in this case." Coulson contends that it was error to exclude the evidence, because it showed Anderson's state of mind, his intent to convert her property, the identity and motive of the person who removed her files, and the absence of mistake.[20]

This was evidence of an alleged prior bad act. It was propensity evidence excludable under Alaska Evidence Rules 403 and 404. The superior court did not abuse its discretion in excluding it on the ground that it was more prejudicial than probative.

### E. *Verdict Form*

■■■ Coulson's claims against ABIB for invasion of privacy, conversion, negligence, and NIED were submitted to the jury with ABIB's proposed special verdict form. The form specified the elements necessary for each of Coulson's claims, and required the jury to answer straightforward "yes or no" questions. Using the form, the jury returned a verdict for ABIB on each claim.

■■■ Coulson argues that the superior court abused its discretion by adopting the detailed verdict form, rather than using a simple form that would have asked whether Coulson had met her burden of proof on each claim.[21] She claims that the special verdict form confused the jury.

There was nothing wrong with the special verdict form. It allowed the jury to evaluate the elements of each claim.[22] We affirm.

---

20. [T]he trial court may in its discretion exclude relevant evidence if it finds its probative value is outweighed by the risk that it will have a prejudicial effect on the jury, confuse the issues, or mislead the jury. The standard for appellate review of a lower court's decision to exclude testimony is whether it committed a clear abuse of discretion.
*Babinec v. State*, 586 P.2d 966, 968 (Alaska 1978) (citations omitted). *See also Sever v. Alaska Pulp Corp.*, 931 P.2d 354, 359 n. 5 (Alaska 1996) ("A trial court's evidentiary rulings are reviewed under the abuse of discretion standard.").

21. "As a type of jury instruction, a special verdict form is subject to the same standard of review as other jury instructions." *Manes v. Coats*, 941 P.2d 120, 125 n. 5 (Alaska 1997). "The trial

court's jury instructions generally involve questions of law which are subject to the independent judgment standard of review. Errors in jury instructions will not be grounds for reversal unless they caused prejudice." *Sever*, 931 P.2d at 361 n. 11. We review de novo the question whether there has been prejudicial error in jury instructions. *See Harris v. Keys*, 948 P.2d 460, 465–66 (Alaska 1997). "The decision whether to include a particular instruction rests with the discretion of the trial court." *Shane v. Rhines*, 672 P.2d 895, 901 (Alaska 1983).

22. *Cf. Patricia R. v. Sullivan*, 631 P.2d 91, 103 (Alaska 1981) (criticizing special verdict form that required jury to list the defects or negligent acts that proximately caused the plaintiffs' injury as confusing in context of strict liability action).

### F. *MMI's Cross–Appeal*

 After three days of trial, MMI moved for a directed verdict. The superior court granted the motion. After two more days of trial, the claims against ABIB were submitted to the jury, which found for ABIB. Applying Alaska Civil Rule 82(b), the superior court awarded MMI twenty percent of its actual attorney's fees, but awarded ABIB thirty percent of its actual attorney's fees. MMI's counsel affied that MMI's actual attorney's fees were $64,365.

MMI argues in its cross-appeal that it was error to award MMI less than thirty percent of its actual and reasonable attorney's fees.[23]

> Rule 82(b)(2) provides in part that,
>
> In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred.

Rule 82(b)(3) itemizes factors that permit deviation from Rule 82(b)(2), but requires a court to "explain the reasons for the variation."

Because no written finding accompanied the order awarding fees, we presume that the superior court did not rely on Rule 82(b)(3). The superior court consequently must have reasoned that the case against MMI was "resolved without trial" for purposes of Rule 82(b)(2) because the court awarded MMI only twenty percent, rather than thirty percent, of its actual attorney's fees. Having awarded ABIB thirty percent of its actual attorney's fees, the superior court appears to have interpreted Rule 82(b)(2) to limit the presumptive thirty-percent rate to parties receiving favorable jury verdicts or trying their cases to completion.

MMI argues that the case against it did in fact go "to trial" for purposes of Rule 82(b)(2), given that its trial lasted three days, and ended only when its directed verdict motion was granted. We agree. We therefore vacate MMI's attorney's fee award and remand for entry of either an award of thirty percent of MMI's fees under Rule 82(b)(2), or written findings under Rule 82(b)(3) to justify a deviation from Rule 82(b)(2).

## IV. CONCLUSION

Because Coulson would have lost even if she had been able to prove that ABIB was MMI's agent, we AFFIRM on the in camera, continuance, agency, and summary judgment issues. Because the superior court did not err by excluding evidence of Anderson's alleged prior bad act under Evidence Rule 403 or by using the detailed verdict form, we also AFFIRM on these issues.

On MMI's cross-appeal, we VACATE the award of attorney's fees for MMI, and REMAND for the proceedings described in Part III.F.

---

**23.** We review the award of attorney's fees for abuse of discretion. *See Bruner v. Petersen,* 944 P.2d 43, 49–50 (Alaska 1997) (citing *McNett v. Alyeska Pipeline Serv. Co.,* 856 P.2d 1165, 1167 (Alaska 1993)). "We will find that a trial court abused its discretion only when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Id.* (citing *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982)).