**Dennis LEE d/b/a United Community Services of America, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. S–11396.

Supreme Court of Alaska.

Aug. 11, 2006.

Rehearing Denied Oct. 10, 2006.

---

Dennis Lee, pro se, Newfoundland, New Jersey.

Cynthia C. Drinkwater, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

---

**1.** AS 45.50.471 *et seq.*

**2.** The advertisement appearing in the Anchorage Daily News was entitled "Prepare To Be Shocked By Technology The Government And Big Business Do Not Want You To Know Exists!" (Emphasis omitted.) The advertisement stated that attendees at an Anchorage presentation would witness "with [their] own eyes" numerous "things the 'experts' say are 'impossible.' " The advertisement included these statements:

- We will prove water can flow up hill without using a pump. Move a lake to a mountaintop.
- You can burn pure water to cut through thick steel or even use it as fuel for an internal combustion engine.

*OPINION*

EASTAUGH, Justice.

# I. INTRODUCTION

The State of Alaska filed a superior court complaint against Dennis Lee alleging he violated Alaska's Unfair Trade Practices and Consumer Protection Act by advertising "revolutionary technologies" and a "free electricity" program. The state also obtained a temporary restraining order enjoining Lee from soliciting Alaskan consumers to buy his products or join his discount buying club. Lee refused to participate meaningfully in discovery, even after the superior court issued orders compelling him to do so. In a thoughtful and well-reasoned decision, the superior court imposed liability-establishing discovery sanctions and civil penalties. We affirm.

# II. FACTS AND PROCEEDINGS

On August 29, 2001 the State of Alaska filed a superior court complaint against Dennis Lee doing business as United Community Services of America (UCSA). The complaint alleged that Lee, UCSA, and two associated corporate entities, Best World Technologies and the International Tesla Electric Corporation (ITEC), had engaged in and continued to engage in unfair or deceptive acts or practices. It also alleged that the defendants violated the Unfair Trade Practices and Consumer Protection Act (UTPCPA) [1] by falsely and deceptively advertising "revolutionary technologies" and a "free electricity" program on the internet and in the Anchorage Daily News.[2] The ITEC website also an-

- You can transmutate the nucleus of an atom to neutralize radioactive waste. We will do it for our audience.
- Use pickle juice, soda pop, water, sugar, crude oil or old transmission gear oil, gas, soy sauce, even human urine, as fuel to run an internal combustion engine with no contaminants released to the environment.
- We'll demonstrate the world's most efficient electric generator ever built ... The Sundance Generator.
- Car engines can be modified to run on 80% water and 20% gas right now! You can sign up to modify your car!
- Buy a furnace that runs on fumes from your septic tank to heat and cool your home and make all your hot water.

nounced related opportunities to invest in "NASDAC," a "special discount buying club," which, among other things, offered commissions to members who became "recruiters."

Lee was scheduled to conduct an August 30, 2001 Anchorage presentation at which he would demonstrate his technologies and offer consumers an opportunity to sign up to "possibly" get free electricity for life. Before the presentation began, the state served Lee with its complaint and a temporary restraining order (TRO) enjoining him from soliciting Alaskan consumers to pay him for products, memberships, dealerships, or other investments related to a "free electricity" program. The TRO stated that Lee could still give the demonstration. Lee gave the demonstration and distributed applications for membership and a "notice of right to cancel" membership in the discount buying club.

As the state's lawsuit against him proceeded, Lee repeatedly thwarted the pretrial discovery process. The state made numerous attempts by telephone and letter to obtain Lee's initial disclosures, but he never provided them. Lee responded late to the state's interrogatories and requests for production and admission. Not satisfied with Lee's responses, the state moved to compel discovery and moved for attorney's fees. On August 31, 2002 the superior court ordered Lee to answer some of the state's interrogatories and to produce specific documents in response to the requests for production. He was to comply within ten days. Lee filed a reconsideration motion, which the superior court denied.

Lee did not provide the discovery the order required. On November 1, 2002 the state filed a motion invoking Alaska Civil Rule 37. The state's motion asked for an order requiring Lee to show cause why he should not be held in contempt for failing to obey the court's discovery order. The state also requested that, if Lee failed to respond to the court's order to show cause, the facts alleged in the complaint be deemed admitted. The superior court scheduled a show cause hearing and warned Lee that if he did not appear at the hearing, the court would consider accepting as established the factual allegations in the state's complaint. Lee did not attend the show cause hearing. Following the hearing, the court issued an order on the state's motion. The order gave Lee one more week in which to provide the ordered discovery responses. Lee did not provide the responses. The court then issued a supplemental order granting the state's request that the facts alleged in the complaint be deemed admitted.

In June 2003 the state moved for summary judgment. It argued that there were no genuine issues of material fact because the court had accepted all facts as alleged in the state's complaint. Lee responded. The superior court granted the state's motion, concluding that Lee had violated the UTPCPA.

The state then asked the superior court to impose civil penalties against Lee. After a hearing on the issue, the court issued a final judgment and order on the motion for civil penalties. The court enjoined Lee from making unsubstantiated claims about products offered for sale and from advertising or soliciting for programs related to those products. The court ordered Lee to refund payments for dealerships, memberships, or products upon request by Alaska residents, and imposed civil penalties of $30,000. The court also awarded costs and attorney's fees to the state.

Lee appeals pro se.[3]

## III. DISCUSSION

### A. Standard of Review

&#9646;&#9646; We review discovery orders under the deferential abuse of discretion standard.[4]

---

&#8226; See the Tornado Engine that harnesses the awesome power of a tornado to provide power for our generator.
The advertisement also stated that presentation attendees could "Sign Up To Possibly Get All Your Electricity For The Rest Of Your Life Absolutely Free!" (Emphasis omitted.) The internet page advertising the Alaska presentation listed these and other technologies that would be demonstrated at the presentation.

**3.** Lee was represented in the superior court by both corporate and local counsel.

**4.** *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999).

Reversal under this standard is warranted only when, after reviewing the whole record, we are left with a definite and firm conviction that the superior court erred.[5] But we apply our independent judgment in deciding the legal question whether the superior court weighed the appropriate factors in issuing a discovery order.[6]

■ A superior court's imposition of sanctions under Alaska Rule of Civil Procedure 37(b) for a party's failure to comply with a discovery order is also reviewed for abuse of discretion.[7] But we use our independent judgment to decide the legal issue whether Civil Rule 37(b)(2) applies to a given fact situation.[8] A superior court's discretion to impose liability-establishing sanctions is limited.[9]

■ Whether Lee violated the temporary restraining order is a mixed question of law and fact. We review the superior court's factual findings under the clearly erroneous standard.[10] We review questions of law de novo.[11]

## B. The Superior Court Did Not Abuse Its Discretion when It Granted the State's Motion To Compel Discovery.

The superior court ordered Lee to answer some of the state's interrogatories and to produce some of the documents requested. Lee argues that the court erred in compelling discovery because (1) the state was pursuing irrelevant information; (2) he tried to comply with the discovery requests; (3) he requested a protective order; and (4) the discovery order should have included specific findings of fact and conclusions of law.

We find no merit in these contentions.

■ ■ First, the superior court did not compel irrelevant discovery. Lee argues that the court's relevancy determination should have been based on "the pleadings as filed." (Emphasis omitted.) Alaska Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

As we have previously explained, discovery rules are to be broadly construed and "relevance for purposes of discovery is broader than for purposes of trial."[12] Lee is therefore incorrect in asserting that the superior court should have limited discovery to information directly related to the pleadings. The state requested information about Alaskan members in Lee's organizations and Alaskan consumers of Lee's products, as well as information about Lee's companies' technologies and employees. The state also requested that Lee identify and produce certain corporate documents. These requests related to Lee's personal jurisdiction defense and to the question whether Lee was deceptively advertising. The superior court did not abuse its discretion when it ordered Lee to respond to some of the state's discovery requests.

■ Second, Lee did not attempt to comply with the discovery requests. Lee argues that he "repeatedly offered to demonstrate all products to [the state], in a private show, to prove to [the state] that the products worked as claimed." The civil rules do not

5. *Nelson–Lizardi v. Lizardi*, 49 P.3d 236, 239 (Alaska 2002).

6. *Coulson*, 973 P.2d at 1146.

7. *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 922 (Alaska 2002).

8. *McGilvary v. Hansen*, 897 P.2d 605, 606 n. 2 (Alaska 1995).

9. *Id.*

10. *DeNardo*, 51 P.3d at 922.

11. *Webb v. State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Webb*, 120 P.3d 197, 198 (Alaska 2005).

12. *Hazen v. Municipality of Anchorage*, 718 P.2d 456, 461 (Alaska 1986); *see also Carstens v. Carstens*, 867 P.2d 805, 808–09 (Alaska 1994) (holding that mental health and joint counseling records of divorcing parties are relevant in divorce action because they presumably contain information about parties' conduct toward each other).

allow for this kind of response to interrogatories and requests for production.[13] The state might have chosen to withdraw some or all of its pending discovery requests in exchange for accepting Lee's demonstration offer, but it was not obliged to do so. With regard to Alaska Civil Rule 26(a) disclosures, those initial disclosures are mandatory and a private showing of Lee's technology would not have supplied the information the rule requires.[14]

Third, the superior court did not abuse its discretion when it denied Lee's request for a protective order after finding that the request was improperly raised and untimely. Lee first raised the issue of a protective order in his motion for reconsideration after the court entered the order compelling discovery. But a motion for reconsideration is not the proper vehicle for seeking a protective order for the first time.[15] And issues raised for the first time in a motion for reconsideration are untimely.[16] Lee should have sought relief under Alaska Civil Rule 26(c), but he did not do so before entry of the order compelling discovery.[17]

Fourth, the superior court was not obligated to issue findings of fact and conclusions of law in conjunction with its orders compelling discovery and denying Lee's motion to reconsider. These orders were issued under authority of Civil Rules 26 and 77. Civil Rule 52(a) states that "[f]indings of fact and conclusions of law are *unnecessary* on decisions of motions under Rules 12 or 56 *or any other motion* except as provided in Rule 41(b)."[18] Lee mistakenly reads our instruction in *Coulson v. Marsh & McLennan, Inc.*—that "[t]rial courts should enter express rulings on motions to compel" discovery—as a mandate to enter findings of fact and conclusions of law.[19] The superior court here issued a written ruling on the state's motion to compel discovery and a written ruling on Lee's motion for reconsideration; it did not err by not issuing findings of fact and conclusions of law in conjunction with those orders.

## C. The Superior Court Did Not Err in Granting the State's Request for Civil Rule 37(b) Sanctions.

Eighteen months after the state filed its complaint, the superior court granted the state's motion for an order to show cause why Lee should not be held in contempt.[20] It decided that the sanction of establishing facts that in turn establish liability was warranted. The court found that Lee's violations of the court's orders were willful, that they

---

13. *See* Alaska R. Civ. P. 33(b)(1) ("Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."); Alaska R. Civ. P. 34(b) ("The party upon whom the request is served shall serve a written response within 30 days.").

14. *See* Alaska R. Civ. P. 26(a)(1).

15. *See* Alaska R. Civ. P. 77(k) (motion to reconsider used to ask court to reconsider its previous decision when court misapplied or failed to consider directly controlling law, overlooked or misconceived material fact or issue, or when law applied in ruling has since changed).

16. *Stadnicky v. Southpark Terrace Homeowner's Ass'n*, 939 P.2d 403, 405 (Alaska 1997).

17. Alaska Rule of Civil Procedure 26(c) provides: "Upon motion by a party . . . the court . . . may make any order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense."

18. Alaska R. Civ. P. 52(a) (emphasis added).

19. *See Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999).

20. The state's motion relied on Alaska Civil Rule 37(b)(2)(A) and (D). Civil Rule 37(b)(2) provides in part:

> If a party . . . fails to obey an order to provide or permit discovery . . ., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> . . .
> (D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to physical or mental examination. . . .

prejudiced the state, and that lesser sanctions would be ineffective at deterring future violations. But in a final effort to give the parties an opportunity to try the case on the merits, the court gave Lee one additional week in which to provide discovery responses. The court promised to enter an order deeming all allegations in the state's complaint admitted if no responses were filed. Lee did not respond. In a supplemental order issued one week after its original order on the state's show cause motion, the superior court granted the state's request that the facts set forth in its complaint be deemed admitted as a Rule 37(b) sanction.

 Alaska Civil Rule 37(b) gives judges broad discretion to enforce discovery orders through sanctions.[21] Before imposing Rule 37(b) sanctions, Rule 37(b)(3) requires the court to consider:

(A) the nature of the violation, including the willfulness of the conduct and the materiality of the information that the party failed to disclose;

(B) the prejudice to the opposing party;

(C) the relationship between the information the party failed to disclose and the proposed sanction;

(D) whether a lesser sanction would adequately protect the opposing party and deter other discovery violations;

(E) other factors deemed appropriate by the court or required by law.[22]

Rule 37(b)(3) also prohibits the court from issuing an order that has the "effect of establishing or dismissing a claim or defense or determining a central issue in the litigation" without first finding that the party acted willfully.[23]

 The superior court followed the correct analysis in applying the Rule 37(b)(3)

factors. First, the court permissibly found that Lee's noncompliance was willful. We define "willfulness" in the context of Civil Rule 37(b) as the "conscious intent to impede discovery, and not mere delay, inability or good faith resistance."[24] Lee argues that he was only seeking invocation of "the protections provided to him by law." But Lee repeatedly, in papers filed in the court, at hearings through counsel in the superior court, and here on appeal, has argued that the state has no right to the discovery requested. As explained above in Part III.B, Lee never properly moved for a protective order. Lee's own attorney admitted at the hearing on civil penalties that Lee's noncompliance was "contemptuous" and "intentional."

Lee suggests that the superior court should have informed him of his right to seek interlocutory review under Appellate Rule 402 and that his failure to comply with the discovery orders should be excused because he assumed that he could not appeal the order compelling discovery. At the show cause hearing, Lee's corporate counsel argued that Lee wanted to appeal the discovery order but had to wait until the court entered a final judgment. Lee's corporate counsel may have been unfamiliar with interlocutory review in Alaska.[25] But the superior court had no duty to inform Lee—a defendant represented in the superior court by both local and corporate counsel—that he had a right to file a petition seeking interlocutory review.[26] The court's job is to be a neutral arbiter, not an instructor. Because Lee was trying to avoid discovery and because the court had no obligation to inform him of the Alaska rules, the superior court did not err when it found that Lee's violation

---

**21.** *DeNardo v. ABC Inc. RVs Motorhomes,* 51 P.3d 919, 922 (Alaska 2002); *see also* Alaska R. Civ. P. 37(b); *Hawes Firearms Co. v. Edwards,* 634 P.2d 377, 378 (Alaska 1981) (quoting *Oaks v. Rojcewicz,* 409 P.2d 839, 844 (Alaska 1966)).

**22.** Alaska R. Civ. P. 37(b)(3).

**23.** Alaska R. Civ. P. 37(b)(3); *see DeNardo,* 51 P.3d at 922–23 (paraphrasing standard for imposing sanctions under Alaska R. Civ. P. 37(b)(3)).

**24.** *DeNardo,* 51 P.3d at 923 (quoting *Hawes Firearms,* 634 P.2d at 378). The noncomplying party has the burden of proving that his failure to comply was not willful. *Id.*

**25.** *See* Alaska R.App. P. 402.

**26.** *See id.*

was a "knowing, willful refusal" to comply with the order.[27]

Second, the superior court did not err in determining that Lee's violation prejudiced the state. As the superior court found, Lee's omissions delayed progress in the case and forced the state to either depose Lee without the aid of written discovery or conduct a trial without benefit of any meaningful discovery.[28]

Third, the superior court did not err in finding a nexus between the withheld discovery and the proposed sanction. A sanction under Rule 37(b)(2) must be "sufficiently related" to the discovery violation.[29] "The test for the validity of a discovery sanction that dismisses claims or orders facts or issues to be taken as established under [Rule 37(b)(2)] is whether these claims or issues are elements of the dispute that cannot be determined on the merits without disclosure of the evidence the court has ordered the party to produce."[30] "If the issues established are not sufficiently related to the withheld information, the discovery sanction is considered mere punishment and is impermissible."[31]

All of the information withheld related to the question whether Lee was making false claims or misrepresenting his technologies. The state's complaint alleged that Lee engaged in false or deceptive advertising in the Anchorage Daily News and internet advertisements. The state alleged that such conduct constitutes unfair or deceptive acts or practices in violation of AS 45.50.471(a) and AS 45.50.471(b)(12). Alaska Statute 45.50.471(a) declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce" are unlawful. Alaska Statute 45.50.471(b)(12) provides that the terms "unfair methods of competition" and "unfair or deceptive acts or practices" include

> using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged.

The information withheld related to the question whether Lee made false claims about his companies and products; it also related to the question of penalties. As the state explains, it had little information about Lee, his businesses, his technologies, and his "free electricity" program. The state could not take the chance that Lee, having failed to provide adequate discovery responses, would attempt to demonstrate his technologies and products at trial. We assume that the science underlying the technologies and products Lee advertised is sufficiently complex that, without pretrial discovery, the state would have had inadequate time to examine and understand the scientific principles pertinent to any demonstration, and consequently might have been unable to dispute whether the demonstration was valid or the principles were invalid.[32] For these reasons, the sanction imposed—accepting the alleged facts as

**27.** See DeNardo, 51 P.3d at 923 (finding DeNardo's noncompliance willful, in part, because "[r]ather than showing that his failure to comply was not willful ... DeNardo repeatedly claimed that [the appellee] had no right to the answers or documents").

**28.** See id. at 925 (noting that parties are entitled to discovery of information relevant to their claims or defenses so they can prepare for litigation).

**29.** McGilvary v. Hansen, 897 P.2d 605, 607 (Alaska 1995); Underwriters at Lloyd's London v. The Narrows, 846 P.2d 118, 119–20 (Alaska 1993); Honda Motor Co. v. Salzman, 751 P.2d 489, 493 (Alaska 1988).

**30.** DeNardo, 51 P.3d at 926 (quoting Hazen v. Municipality of Anchorage, 718 P.2d 456, 460 (Alaska 1986)) (internal quotation marks omitted).

**31.** Honda Motor Co., 751 P.2d at 493 (internal quotation marks omitted); see also DeNardo, 51 P.3d at 926.

**32.** For example, it is likely the state would have suffered prejudicial surprise if, absent pretrial disclosure, Lee at trial had demonstrated working examples of the Sundance Generator and Tornado Engine that performed as advertised, or demonstrated the use of water as fuel for an internal combustion engine.

admitted—was sufficiently tailored to the discovery violation.

Fourth, the superior court properly determined that there were no viable alternative sanctions. A superior court may not issue liability-establishing sanctions without first exploring possible and meaningful alternatives to dismissal.[33] Lee argues that "no serious search for alternatives occurred." But the superior court specifically considered imposing fees or delaying trial, and found those sanctions inappropriate because they would not deter future discovery violations or would prejudice the state. The superior court had already given Lee numerous opportunities to comply. And the court gave Lee another week in which to comply before it issued the sanction. We think the process the court followed is highly desirable because it makes it clear on appellate review that no alternative lesser sanctions were available or appropriate.

Finally, Lee argues that the superior court inappropriately faulted Lee for not appearing at the show cause hearing. But as the state points out, the superior court did not find Lee "culpable" for missing the hearing. The court noted Lee's absence in one paragraph of its seven-page order, and in one sentence of its supplemental order. It based its decision to enter the liability-establishing sanction not on Lee's nonappearance, but on the evidence before it. The superior court did not err or abuse its discretion in mentioning Lee's absence from the show cause hearing.

We think the superior court's rulings on the state's motion for sanctions contain a model analysis of the pertinent factors and that its decision was appropriate in light of Lee's noncompliance.[34]

### D. The Superior Court Did Not Err in Finding that Lee Violated the TRO.

The superior court imposed civil penalties of $30,000 against Lee—$25,000 for violating the TRO and $5,000 for deceptive advertising.[35] Lee argues that the superior court erroneously accepted the state's allegation that the pamphlets handed out at the presentation were "solicitations."

■■■ The TRO prohibited Lee from "*soliciting* Alaskan consumers to pay him money or anything of value for products, memberships, dealerships or other investments relating to a plan, scheme, or opportunity *to provide free electricity.*" (Emphasis in original.) The state presented unrebutted evidence that a state trooper served Lee with the TRO before 4:00 p.m. on the day of the presentation and that a civilian process server also served him with the TRO at 6:52 p.m. The presentation started at 7:00 p.m. Lee admitted to distributing "hand-outs" before the presentation. Those "hand-outs" included an "Application for Membership in the N.A.S.D.A.C. Program" and a "Notice of Right to Cancel" membership in NASDAC. The NASDAC membership application stated that membership costs $15 and entitles members to discounts on merchandise after the first $60 spent. It also stated that members are automatically registered in a "Free Energy Program" which entitles them to "26,000 kwh of free electricity each and every year, possibly for the rest of [their lives], if and when the free electricity technology is brought to market!"

■■■ The superior court did not clearly err when it found that Lee violated the TRO. The evidence presented to the superior court shows that Lee distributed the handouts after being served with the TRO. The handouts were "solicitations." [36] By distributing the handouts, Lee was "soliciting" Alaskan consumers—he was seeking to obtain their business through the membership applications.[37]

---

**33.** Alaska R. Civ. P. 37(b)(3)(D); *DeNardo*, 51 P.3d at 926.

**34.** We attach the superior court's decision and supplemental order as an appendix.

**35.** The superior court imposed penalties under AS 45.50.551(a) and (b).

**36.** Black's Law Dictionary defines "solicitation" as (1) "[t]he act or an instance of requesting or

seeking to obtain something"; (2) "[a]n attempt to gain business." Black's Law Dictionary 1427 (8th ed.2004). Webster's Dictionary defines "solicit" as "[t]o try to obtain by entreaty, persuasion, or formal application." Webster's II New Riverside University Dictionary 1106 (1994).

**37.** Whether the pamphlets are "solicitations" is a question that was appropriately decided by the superior court judge. Although Lee argues that

## E. Lee Either Waived or Failed To Preserve His Other Arguments.

In his opening and reply briefs, Lee mentions other tangential issues, including the use of hearsay evidence, the late filing of the TRO violation, the state's use of information from other states' attorneys general, the lack of a due date for the initial disclosures, the use of rubber-stamp signatures, and the amount of the penalty imposed. We decline to consider these arguments because they either were not preserved below or have been waived on appeal.[38]

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's orders and judgment. The superior court issued a model decision that we AFFIRM here.

## APPENDIX

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT AT ANCHORAGE

State of Alaska,

 Plaintiff,

v.

a jury should have decided the question, Lee requested an oral hearing, not a jury trial. He therefore waived his right to a jury trial on the issue, *see* Alaska R. Civ. P. 38(b)-(d), and the superior court did not make any obvious mistake warranting a holding that it plainly erred. *See Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981) ("We decline to review claims not raised below except to the extent that they may constitute plain error. Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted.").

38. *See* Alaska R. Evid. 103(a) (requiring timely objection or motion to strike to preserve issue of erroneous evidentiary ruling); *Bird v. Starkey*, 914 P.2d 1246, 1248 n. 1 (Alaska 1996) (holding hearsay objection waived when not raised before superior court); *see also Peterson v. Ek*, 93 P.3d 458, 464 n. 9 (noting issues raised by pro se litigant in cursory fashion, without citing any legal authority, are considered waived); *Zok v. State*, 903 P.2d 574, 576 n. 2 (Alaska 1995) (holding pro se litigant waived issue on appeal even though he developed issue in reply brief); *Miller*, 636 P.2d at 1189 (deciding that issues not raised below would not be considered on appeal unless they constitute plain error).

Dennis Lee d/b/a United Community Services of America,

 Defendant.

3AN–01–10170 Civil

*Order on Motion for Order to Show Cause Why Defendant Should not be Held in Contempt*

This is an action under the Unfair Trade Practices and Consumer Protection Act, AS 45.50.471. It arises from an ad placed in the Anchorage Daily News for a demonstration of technology. The Complaint alleges that the ad claimed that Defendant's presentation would include proof that water can "flow up hill without using a pump", that "one can burn pure water to cut through thick steel" and "transmutate the nucleus of an atom to neutralize radioactive waste." Complaint at page 2.

This Complaint was filed in August 2001. The file demonstrates that Defendant's delays have caused almost no progress to be made since that time. The reasons for the delays range from Defendant's persistent filing of improper pleadings and ignoring Alaska court rules to repeated requests for initial disclosures and discovery responses being ignored by the Defendant.[1]

1. On October 4, 2001, Defendant first requested an extension of time to file an Answer because he was on a national tour. Judge Joannides granted an extension until February 8, 2002. On February 11, 2002, the Court provided Defendant's in-house counsel with a copy of ARCP 81 regarding the admission of counsel pro hac vice. Mr. Lee nevertheless filed Answers that he signed himself, purporting to answer on behalf of a corporate entity. Meanwhile, a Pretrial Scheduling Order was entered requiring Initial Disclosures to be exchanged by May 14, 2002. Defendant did not produce these, nor were the State's initial discovery requests answered. The State moved for the extension of pretrial deadlines and filed its Motion to Compel on July 24, 2002. Defendant's Opposition was late and offered no explanation for the failure to provide Initial Disclosures, responses to requests for admission or more than cursory responses to the remaining discovery requests. The Motion to Compel was granted, including the requirement that for withheld documents sufficient information had to be provided in order for the State to challenge any claims of privilege. A Motion for Reconsideration was filed by Defendant, not signed by local counsel or counsel for the Defendant, though this

On July 24, 2002, the State filed a Motion to Compel. I granted the Motion by Order dated September 3, 2002. A Motion for Reconsideration was filed by Defendant. I denied it on September 20, 2002.

A Motion for Order to Show Cause was filed by the State on November 1, 2002. The Motion alleges that the Defendant had not filed supplemental discovery in response to my September 3rd or September 20th Orders.

A hearing was held on March 12, 2003 on the motion for Order to Show Cause. Ms. Drinkwater appeared at the hearing on behalf of the State of Alaska. Ms. McMahon participated in the hearing telephonically on behalf of the Defendant, having received permission to participate in this matter pro hac vice. Local Counsel, Ms. Sullivan, also appeared.

The issue at the hearing on the Motion for Order to Show Cause was why Defendants should not be held in contempt for failing to abide by the Order entered on the Motion to Compel. Ms. McMahon addressed this issue at length, repeatedly explaining that she and her client disagree with my ruling. Notably, she made no argument that Defendant is unable to comply with my Order on the Motion to Compel or lacked notice of it. Ms. McMahon argued that her client is concerned that discovery provided in this case might be shared with other attorneys general in other parts of the country to the prejudice of her client.

Ms. McMahon's strenuous argument left no doubt that her client is willfully refusing to abide by court Orders. She expressed the view that her client is not able to file an appeal of my decision until a final judgment is offered, though no basis for that opinion was offered. Defendant has local counsel to provide advice regarding the provisions for challenging the ruling without waiting for the entry of final judgment. See: Appellate Rule 402.

I inquired several times at the hearing whether Defendant had filed a Motion for Protective Order. Both the State's counsel and Ms. McMahon stated that no such Motion had been filed.[2] In fact, the Motion for Reconsideration raises that issue in passing in its conclusion, at page 9 of the pleading. It was not discussed at any length and was not properly raised in the context of a Motion for Reconsideration. See: ARCP 77(k) (setting forth grounds for motions for reconsideration). Defendant had ample opportunity prior to my initial ruling to raise this issue in response to the State's Motion to Compel. The Alaska Supreme Court has expressed quite clearly that issues raised for the first time in Motions for Reconsideration are untimely. See *DeNardo v. GCI Communication Corp.*, 983 P.2d 1288, 1290 (Alaska 1999).

I also inquired at March 12th oral argument regarding whether there had been any attempt by the Defendant to file the discovery in camera. Counsel responded that no such attempt had been made.

Ms. McMahon argued that her client should be excused from violating the Order on the Motion to Compel because she had been ill for 3 months. The Court's file includes a letter from Mr. Lee dated November 8, 2002 in which he advised that Ms. McMahon was indeed ill, that she was expected to be out of work for an additional four—six weeks from that date and that her

defect was later cured. The Motion for Reconsideration argued the merits of the Motion to Compel for the first time, but failed to specifically state the grounds for reconsideration specified in ARCP 77(I). As noted, the Motion for Reconsideration was denied by Order dated September 20, 2002.

**2.** Within a few minutes after the hearing, my clerk received a telephone call from Ms. Drinkwater and Ms. McMahon. Both counsel asked to speak with me. It is not unusual for me to discuss scheduling logistics with all counsel of record in telephone calls, but I do not take up substantive matters off record. I joined the call by asking who was on the line. I was informed that Ms. Sullivan was not. I advised that she needed to be involved. Ms. McMahon stated that she wanted me to know that she had raised the issue of a protective order in the Motion for Reconsideration filed in September. I advised that I was not willing to have the call without Ms. Sullivan, as Ms. McMahon is not local counsel and her statements at the earlier hearing had caused me concern that she is not familiar with local rules. I then terminated the call.

illness had predated the filing of his November 8th letter by approximately one month. The letter states that her illness left the Defendant without counsel to prepare responses. Rather than giving notice of an intention to appeal my ruling, or notice of an intent to file a Motion for Protective Order or a Motion for Incamera Inspection, Mr. Lee's November 8th letter requested an additional 45 days to comply with my Order. It is clear to me after the March 12 hearing that no such compliance has been made. Ms. McMahon's illness does not explain the failure to comply with the September 20th Order. Five months have lapsed since the entry of the Order and, in spite of Ms. McMahon's 3 month illness, Defendant is represented by local counsel who could have assisted in providing responses had Defendant made himself available. There was no suggestion at oral argument that Mr. Lee had done so.

The State's Motion for Order to Show Cause was filed November 1, 2002. In the Order scheduling oral argument for February 21, 2003,[3] I advised Mr. Lee that he must appear at the March 12, 2003 hearing or I would consider the State's request that all facts in the State's Complaint be deemed admitted. The same order gave Mr. Lee permission to appear at the hearing on the Motion for Order to Show Cause telephonically. Mr. Lee did not appear at the hearing, no explanation was offered for his absence, and no testimony was taken to explain his failure to comply with the subject Orders.

After considering all argument at the Motion for Order to Show Cause, I am convinced by Ms. McMahon's unambiguous statements and representations that the Defendant remains entrenched in his view that my original orders are in error and are not to be followed.

ARCP 37 allows for broad discretion when fashioning sanctions for violations of discovery orders. The State's requested sanction would effectively end this litigation. That sort of sanction is to serve as a last resort.

Per ARCP 37(b)(3), I must consider whether the violation of my Orders was willful. Ms. McMahon's argument leaves no doubt that it was. I find that the violation was a knowing, willful refusal to abide by the Order. I further find that the information that the Defendant has failed to disclose is highly material to this action. It consists of the initial discovery requests filed by the State seeking very basic information concerning Defendant's business activities. Little progress can be made without responses to the requests. Indeed, this case has been pending since August of 2001 and almost no substantive progress has been made. The prejudice resulting from Defendant's delays is significant and substantial, since Defendant's omissions put the State in the position of either deposing Mr. Lee without the ability to review the written discovery first, or proceeding to trial without having completed any meaningful discovery in this case.[4]

As required by the rule, I have considered whether a lesser sanction would adequately protect the State and whether it would deter other discovery violations by Defendant. I do not find that a lesser sanction is likely to protect the State, since without the requested discovery the State will be unfairly placed in the position of proceeding to trial with very little usable discovery. A monetary sanction can compensate the State for its attorney's fees, but not for the inability to prepare its case for trial, and a delay in the trial date to allow another opportunity to complete discovery prejudices the State, not the Defendant. As noted, Ms. McMahon's argument on record leaves me to conclude that Mr. Lee has no intention of complying with future orders. I find under the final factor in ARCP 37(b)(3) that there is therefore little likelihood that other discovery violations by Defendant will be deterred as a result of the Order I enter today.

Because the Alaska Supreme Court has repeatedly ruled that litigation-ending sanctions are to be avoided, as a final attempt to put the parties in the position where this case can be fairly tried on its merits, I order the State to file a Status Report, directly in

---

3. The hearing had to be rescheduled to March 12, 2003.

4. This case is set for trial the week of March 17, 2003.

chambers, on March 21, 2003 regarding the status of Defendant's discovery responses. If no responses have been received in the State's offices by that date, I will enter an order that all allegations contained in the State's Complaint are deemed admitted. I will also consider the State's application for an award of fees. The State is ordered to provide a fax number to the Defendant by the close of business on March 14, 2003 so that discovery responses may be served via fax. If faxed responses are received by noon on March 21, 2003, the originals may follow by mail.

The trial date currently scheduled for March 1, 2003 is vacated. I will consider whether it is necessary to set a new trial date when I receive the State's Status Report on March 21, 2003.

DATED 3/14/03

/s/ Morgan Christen
Superior Court Judge

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT AT ANCHORAGE

State of Alaska,

 Plaintiff,

v.

Dennis Lee d/b/a United Community Services of America,

 Defendant.

3AN–01–10170 Civil

*Supplemental Order on Motion
for Order to Show Cause*

Per the Order dated March 14, 2003, I have received and considered the correspondence from the Defendant dated March 19, 2003, the correspondence from Defendant to the State's attorney dated March 18, 2003, the State's responsive correspondence and the State's Status Report dated March 21, 2003.

For the reasons set forth in the Order dated March 14, 2003, I now grant the State's request that the facts set forth in its Complaint be deemed admitted for purposes of this litigation. Other sanctions for the Defendant's refusal to comply with the previous orders compelling discovery have been considered. None are adequate. The Defendant did not appear at the hearing on the Motion for Order to Show Cause. The Defendant has not served even partial discovery responses in the wake of the most recent order regarding the need to provide discovery responses by March 21, 2003. The Defendant did not serve objections or attempt to identify the documents being withheld under claim of privilege. No motion has been filed for a protective order. Merely sending a letter demanding a protective order affording "usual" protections is insufficient. Rather than attempting to comply with the most recent Order, Defendant has demonstrated its continuing refusal to abide by the order of the court.

DATED 3/26/03

/s/ Morgan Christen
Superior Court Judge