Charles TAYLOR and Charmaine Taylor, husband and wife, and as parents and next friends of Charles Michael Taylor, Jr.; Angelo Tishwan Taylor; Anton Q– Terrio Taylor; Wilbert Levar Taylor; and Keianna Lillian Charmaine Taylor, Appellants,

v.

Oliver JOHNSTON, as personal representative for Glenn Ferris, M.D., deceased, Appellee.

No. S–8316.

Supreme Court of Alaska.

Aug. 13, 1999.

William J. Donohue, Girdwood, for Appellants.

Donna M. Meyers and Howard A. Lazar, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, FABE, BRYNER, and CARPENETI, Justices.

## *OPINION*

FABE, Justice.

## I.  *INTRODUCTION*

After becoming a partial paraplegic following treatment for migraine headaches, Charles Taylor sued his doctor, Glenn Ferris, for medical malpractice.[1]  The jury found that Ferris was not negligent.  Taylor appeals the defense verdict, arguing that the trial court erred by (1) denying his motion to amend the complaint to include a claim for battery based on Ferris's alleged fraud in obtaining his medical license, (2) denying his motion to reopen discovery, and (3) allowing trial to proceed without an expert advisory panel report.  We affirm.

## II.  *FACTS AND PROCEEDINGS*

In June 1993 Charles Taylor's neurologist referred him to Dr. Glenn Ferris for treatment of his migraine headaches.  Taylor visited Ferris for a consultation and examination on June 29.  He received the first of a series of trigger-point injections the next day.  A week later, Ferris performed a cervical epidural steroid injection on Taylor at the Alaska Surgery Center.  During this procedure, Ferris injected a drug into an area of Taylor's neck that lies very close to the spinal cord.

Soon after this injection, Taylor began to experience complications and severe pain in his neck.  An emergency room doctor and a neurosurgeon determined that Taylor had developed a blood clot.  The neurosurgeon

---

1.  Appellee Oliver Johnston is the personal representative for Glenn Ferris, who died during the pendency of this appeal.

removed the blood clot, but a second blood clot then developed. After removal of the second blood clot, Taylor sustained permanent spinal cord injuries.

Taylor sued Ferris for medical negligence in July 1994. Three months later, Taylor moved for appointment of an expert advisory panel pursuant to AS 09.55.536, which provides for an independent review process for medical malpractice claims. Ferris did not oppose the motion but recommended that the court appoint an expert from each of three specialties: physical medicine, any medical specialty familiar with the use of injections of epidural steroids for pain relief, and neurosurgery. Superior Court Judge Joan M. Woodward granted this motion in November 1994 but did not appoint a panel at that time.[2] Judge Woodward held a pretrial conference in October 1995 and scheduled trial for October 1996.

In March 1996 Taylor again moved for appointment of an expert advisory panel. Judge Woodward informed the parties of the Alaska State Medical Association's submitted nominations to the panel—all anesthesiologists—and ordered the parties to exchange documents and exhibits for the panel's review. Ferris then moved to disqualify one nominee, claiming that the doctor had personal animosity and bias toward him. At the same time, Ferris asked to substitute a physiatrist and a neurosurgeon for two of the panel nominees. Ferris also suggested that the panel process was futile because trial was at that point only seven weeks away. Taylor opposed this motion, asserting that Ferris did not support his claim of bias with any evidence other than hearsay and that a physiatrist is held to the same standard of care as an anesthesiologist in a medical negligence action.

About a month before trial, Taylor moved for a continuance and asked to reopen discovery in order to present newly discovered evidence of Ferris's allegedly fraudulent actions in obtaining his medical license to the expert advisory panel. Taylor's stated reasons for the necessity of a continuance were

that (1) discovery of expert witnesses was not complete; (2) the expert advisory panel had not reviewed the case; (3) Ferris had challenged the panel composition; (4) the assigned judge had retired; and (5) a party had preempted the newly assigned judge, leaving no judge to decide the outstanding motions. In support of his motion to reopen discovery, Taylor claimed that additional discovery was necessary to refute Ferris's credibility and to prove that Ferris lacked the degree of knowledge and skill required of health care providers.

On October 8, 1996, Superior Court Judge Rene J. Gonzalez held a status conference at which he postponed the trial date to June 1997; he did not rule on the motion to reopen discovery. On the same day, Taylor moved to file a second amended complaint that included a battery claim against Ferris. In his opposition to this motion, Ferris argued that the motion was untimely and that the amended complaint would fail to state a claim upon which relief could be granted.

In support of his motions for continuance, to reopen discovery, and to amend the complaint, Taylor pointed to evidence that Ferris had lied to the Alaska Medical Board and the Alaska Surgery Center when he told them that he had never been barred from receiving a license in any other state. Taylor also offered to prove that the Texas Board of Medical Examiners had denied Ferris's application to be licensed in Texas in 1988 because of "concerns relating to his medical education, falsification of his application for licensure, questionable professional ability, and lacking documentation." Taylor further alleged that Ferris had failed to complete the requirements for a medical degree from the University of Montemorelos in 1981 because he was in Powell, Wyoming during his required year of social service training. Finally, Taylor stated that Ferris never completed the requirements for certification by the American Board of Physical Medicine and Rehabilitation because he did not complete a

2. The clerk of court sent a first request for panel nominees to the Alaska State Medical Association in September 1995 and a second request in January 1996 because the medical association had not responded.

year of clinical practice.[3] Because of these alleged misrepresentations, Taylor claims that Ferris was not properly licensed in Alaska in 1993, when Taylor was his patient.

The court denied Taylor's motion to file a second amended complaint. While the court found the motion untimely, it did not believe that the untimeliness was a sufficient ground for denying the motion. Instead, it based its ruling on the conclusion that a cause of action for battery by medical fraud did not exist.

In October 1996 the superior court appointed the three originally submitted nominees to the expert advisory panel. The court denied Ferris's motion for disqualification of one panel nominee and his motion for substitution of a physiatrist or neurosurgeon. The court instructed the panelists to answer specific questions regarding the medical treatment that Ferris provided to Taylor.

The parties submitted lists of documents for panel review in November 1996. Taylor's proposed submissions included documents supporting his claim that Ferris had fraudulent credentials. Ferris sought to include a medical summary of Taylor's medical records and certain depositions. Both parties moved to limit the other's submissions. But the court never ruled on these motions,[4] and the expert advisory panel never issued a report because it did not receive the documents.

The trial proceeded on June 2, 1997, addressing only the issue of negligence. The jury found that Ferris was not negligent.

Taylor appeals the trial court's denial of his motion to file an amended second complaint including battery, his motion to reopen discovery to support that battery claim, and the trial court's failure to submit the case to the panel.

## III. DISCUSSION

### A. Standard of Review

■■■ Superior courts have broad discretion to determine whether to allow or refuse an amendment to a complaint[5] after a responsive pleading has been filed;[6] we will interfere only if we find an abuse of discretion.[7] Similarly, we review a motion to reopen discovery for an abuse of discretion.[8] "We will find an abuse of discretion when we are left with a definite and firm conviction after reviewing the whole record that the trial court erred in its ruling."[9]

■■■ We apply our independent judgment to questions of statutory interpretation,[10] such as whether the trial court properly construed and fulfilled its statutory duty to appoint an expert advisory panel. This court's duty is "to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[11]

### B. The Trial Court Properly Denied Taylor's Motion to File a Second Amended Complaint.

■■■ Taylor argues that he should have been allowed to amend his complaint to in-

---

**3.** Although Ferris claimed to have fulfilled his clinical practice requirement at Broken Arrow Medical Center in Oklahoma from August 1987 to July 1988, an administrator of Broken Arrow testified that Ferris resigned from the program. The administrator noted that, had he not resigned, Ferris would have been discharged because of personality and character problems.

**4.** In April 1997 Judge Gonzalez ordered all motions held in abeyance while Taylor petitioned this court for review of the denial of the motion to amend the complaint. But even upon denial of the petition for review, the trial court only proceeded to address the pending summary judgment motions and never addressed the other pending motions, including each party's motion to limit documents in the panel's review.

**5.** See Betz v. Chena Hot Springs Group, 742 P.2d 1346, 1348 (Alaska 1987); Rutledge v. Alyeska

Pipeline Serv. Co., 727 P.2d 1050, 1054 (Alaska 1986).

**6.** See Alaska Rule of Civil Procedure 15(a).

**7.** See Betz, 742 P.2d at 1348; Rutledge, 727 P.2d at 1054.

**8.** Cf. Mount Juneau Enters., Inc. v. City & Borough of Juneau, 923 P.2d 768, 773 (Alaska 1996) (reviewing motion to continue discovery under Civil Rule 56(f) for an abuse of discretion).

**9.** Christensen v. NCH Corp., 956 P.2d 468, 473 (Alaska 1998).

**10.** See Alaska Hous. Fin. Corp. v. Salvucci, 950 P.2d 1116, 1119 (Alaska 1997).

**11.** Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

clude a battery claim because Ferris obtained his consent to the cervical injections by fraud. Alaska Civil Rule 15(a) provides that, after responsive pleadings have been filed, "leave [to amend] shall be freely given when justice so requires." But "[i]f the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." [12] In deciding a motion to amend a complaint, the trial court must balance "the degree of prejudice to the opposing party against the hardship to the movant if the amendment is denied." [13]

Ferris asserts that the trial court correctly concluded that justice did not require allowing the amendment because allowing the amendment would have resulted in "significant delay, time and expense" for "an amendment that on its face would not withstand a motion to dismiss." In particular, Ferris claims that "[t]he additional battery claim would have substantially changed the theory of the case and required additional discovery and preparation for trial."

In denying the motion to amend, the trial court focused on the futility of the battery claim rather than the potential prejudice to Ferris. The trial court found that no cause of action for battery existed because Ferris performed the procedure with "the intent of curing Taylor":

Taylor alleges that the performance by Ferris of the injection upon Taylor constitutes a battery as Ferris was not a validly licensed physician.... Taylor, however, has provided no indication whatsoever that Ferris intended to commit a harmful contact with Taylor. To the contrary, given the proffered materials, it is clear that Ferris intended to help Taylor through the injection, and it was anything but his intention to harm Taylor.

Relying on the Restatement (Second) of Torts §§ 18, 21, and 34 comment a, we recognized in *Merrill v. Faltin* [14] that motive is not a critical element of a battery claim:

To make one liable for an assault and battery it is not necessary that he be inspired by malicious motives. If one acts intending to cause a harmful or offensive contact with the person of another, and if the latter is put in imminent apprehension of such a contact, and an offensive contact results, one is liable for an assault and battery even though he acted with no feeling of hostility or ill will or enmity toward the other.[15]

We reemphasized this reasoning in *Lowdermilk v. Lowdermilk,* [16] when we again noted that an actor may be liable for an assault and battery despite a lack of intent to cause injury.[17] Thus, under Alaska law, an assault and battery claim turns not on the motive of the actor but on the consent of the victim.

We have not had an occasion to address a medical battery claim in which a physician obtains a patient's consent by fraud. But the commentary to the Restatement (Second) of Torts § 892B states that "if [a person] is induced by the fraud, mistake or duress to consent to a harmful or offensive contact with his person, he may maintain an action for battery." [18] The Restatement specifically notes that fraud may negate the element of consent between a patient and a doctor, providing the following example: "A, a physician, called to attend B in childbirth, takes C, a layman, with him. B, believing as C knows, that he is a physician, permits him to attend her during her confinement. C, under A's direction, holds B's hands. C is

---

12. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1487 (2d ed.1990).

13. *Betz,* 742 P.2d at 1348 (citations and internal quotation marks omitted); *see also Rutledge,* 727 P.2d at 1055.

14. 430 P.2d 913 (Alaska 1967).

15. *Id.* at 917 (citing the Restatement).

16. 825 P.2d 874 (Alaska 1992).

17. *Id.* at 879.

18. Restatement (Second) of Torts § 892B cmt. a (1979); *see also* 6A C.J.S. *Assault and Battery* § 16 (1975 & 1998 Supp.) ("Consent, in order to constitute a defense, must be knowingly and intelligently given, and not the result of fraud ...." (citations omitted)).

subject to liability to B." [19]

In a factually analogous Connecticut case, *Khouri v. Koloniaris*,[20] the plaintiff alleged that the removal of his teeth by the defendant constituted an assault and battery because the defendant had falsely claimed to be a licensed dentist.[21] The plaintiff claimed that he would not have consented to the act if he knew the defendant was not a licensed dentist.[22] The defendant moved to strike the claim because the plaintiff failed to allege that the defendant intended to cause the injuries.[23] In rejecting the defendant's argument, the Connecticut superior court reasoned:

> [I]ntent is gist of action only where battery is committed in performance of act not otherwise unlawful; if cause of action is battery committed in performance of unlawful or wrongful act, intent of wrongdoer to injury is immaterial; he is answerable for what directly and actually results from his conduct, even though he did not intend the particular injury which follows.[24]

While the court noted that medical battery has generally been reserved for situations in which a physician fails to obtain any consent to the particular treatment,[25] it nevertheless concluded that "[b]ecause the plaintiff has alleged that the defendant fraudulently misrepresented himself as a licensed dentist and that the plaintiff allowed the defendant, based on that misrepresentation, to provide dental treatment . . ., the plaintiff has indeed alleged sufficient facts to support an action for battery." [26]

██ Because we find these authorities convincing, we conclude that a battery claim may lie if a person falsely claiming to be a physician touches a patient, even for the purpose of providing medical assistance. But here, Taylor was not treated by someone who was falsely representing himself as licensed. In fact, Ferris had a medical degree, was certified by the American Board of Physical Medicine and Rehabilitation, and was licensed to practice in Alaska. Accordingly, Ferris's representations to Taylor that he was a licensed and board-certified doctor were accurate. Thus, Taylor may not sue for battery on the basis that Ferris falsely claimed to be a licensed doctor.

Taylor does not dispute that Ferris is licensed; instead, he contends that Ferris improperly obtained his license by misrepresenting his credentials. But as Ferris argues, "the superior court and the jury lack authority to declare Dr. Ferris' license to be void or voidable." Alaska's statutory scheme confers exclusive authority to grant or revoke licenses to the Alaska State Medical Board.[27] Such a delegation makes sense because "[m]edicine is a complex subject and . . . [t]he Board is a competent body equipped with the necessary medical knowledge to determine whether a doctor's license to practice should be revoked." [28] And as Ferris notes, "[i]f a plaintiff could bring a fraud claim by simply alleging a licensed physician was not properly licensed, nearly every medical negligence action would include a fraud claim."

For these reasons, we choose not to look behind the Board's decision to license Ferris. Taylor could have requested a stay of the case in order to apply to the licensing board for an action on Ferris's license or a declaration that Ferris's license was void from its

**19.** Restatement (Second) of Torts § 55 cmt. b, illus. 3 (1965).

**20.** No. CV 330880, 1997 WL 80676 (Conn.Super.Feb.10, 1997).

**21.** *See id.* at *1.

**22.** *See id.*

**23.** *See id.* at *2, *4.

**24.** *Id.* at *4 (quoting Stuart M. Speiser et al., 7 The American Law of Torts 891 n.87) (internal quotation marks omitted).

**25.** *See id.* at *2.

**26.** *Id.* at *3.

**27.** *See, e.g.,* AS 08.64.101 (requiring Board to admit, license, and discipline physicians); AS 08.64.170 (mandating that all Alaska physicians be licensed by the Board); AS 08.64.230 (empowering Board to grant licenses); AS 08.64.331 (describing the Board's disciplinary powers, including license revocations).

**28.** *Storrs v. State Med. Bd.*, 664 P.2d 547, 554 (Alaska 1983).

issuance, but he did not do so. The fact that Ferris was licensed in Alaska at the time of the procedure defeats Taylor's claim for medical battery based on fraud.

C. *The Trial Court's Failure to Rule on the Motion to Reopen Discovery Does Not Require Reversal.*

The trial court never ruled on Taylor's motion to reopen discovery to further explore the representations Ferris made to obtain his medical degree and license. Taylor now argues that the trial court's failure to rule on the motion, thereby preventing Taylor from supporting his battery claim or impeaching Ferris's credibility, requires reversal and a new trial. We disagree.

Ferris maintains that Taylor effectively abandoned his motion to reopen discovery when he requested that the superior court not delay the trial if this court refused to grant Taylor's petition for review. Taylor initially moved to reopen discovery in order to submit further evidence to the expert advisory panel. But he later petitioned this court for review of the motion to reopen discovery for impeachment purposes. He then conceded a month before trial that "[i]f the Supreme Court ruling is against Taylor, then there is no reason to delay the trial. As matters now stand, Taylor does not want to vacate the trial date." When the trial court ordered that the summary judgment hearing would take place as scheduled, it commented that "[t]he parties have made it clear that the trial date of June 2, 1997, [should] remain undisturbed." Moreover, Taylor did not alert the trial court after we denied the petition for review that the motion to reopen discovery was still pending. Because Taylor failed to request a ruling on the motion to reopen discovery after denial of the petition for review and insisted that the trial date not be postponed, the trial court had no reason to understand that it needed to rule on the motion for the purpose of allowing Taylor to develop impeachment material for trial.

Even if the trial court erred in failing to reopen discovery, we conclude that any error was harmless.[29] The trial court permitted Taylor to introduce a substantial amount of impeachment evidence at trial, allowing him to question the validity of Ferris's medical degree and the fulfillment of the social service required to complete his training. During trial, Taylor was also permitted to accuse Ferris of misrepresenting and falsifying his credentials to obtain board certification from the American Board of Physical Medicine and Rehabilitation. Finally, the court admitted testimony from Taylor's experts that Ferris had fraudulently obtained his medical degree and board certification and that other states had denied his license for these reasons. Because the trial court gave Taylor substantial latitude to present this impeachment evidence, any error in the trial court's failure to rule on the motion to reopen discovery for impeachment purposes was harmless.

D. *The Trial Court Did Not Err in Proceeding to Trial Without an Expert Advisory Panel Report.*

Because the trial court never ruled on the parties' motions regarding submission of documents to the expert advisory panel and that panel subsequently never issued a report, Taylor contends that the case should be remanded for a new trial on negligence, causation, and damages. Alaska Statute 09.55.536 "provides for mandatory pre-trial review of medical malpractice claims by an expert advisory panel and makes the panel's written report admissible in evidence at trial."[30] The Alaska panel review process "ensure[s] that a malpractice plaintiff's case proceeds along the normal path to litigation after a maximum delay of eighty days."[31] The trial court has discretion to bypass this review process, however, if it "decides that an expert advisory opinion is not necessary for a decision in the case."[32]

Although Ferris is correct in noting that AS 09.55.536 does not require the completion

---

**29.** *See* Alaska R. Civ. P. 61.

**30.** *Keyes v. Humana Hosp. Alaska, Inc.,* 750 P.2d 343, 345 (Alaska 1988).

**31.** *Id.* at 350.

**32.** AS 09.55.536(a).

of a panel report in order for a malpractice trial to proceed, the trial court's actions gave the parties a reasonable expectation that the panel would complete a report before trial. Although difficulties in securing panel nominees delayed the panel process for two years, the trial court nevertheless acknowledged the requirements of the statute and accordingly appointed a panel seven months before trial in October 1996. In November 1996 the parties agreed to submit a list of documents for panel review but proceeded to disagree over the appropriate submissions. At this point, the parties had a reasonable expectation that the expert advisory panel process would proceed. Yet the trial court never ruled on the parties' various motions regarding submissions to the panel nor did it submit the case to the panel for review. Thus, although AS 09.55.536 does not require the completion of a panel report before trial, the trial court should have waited for a report in this case.

 But because Taylor failed to object at the trial level to allowing the trial to proceed before the panel completed its review, he has waived this issue on appeal. To preserve a claim based on a superior court's failure to rule on a motion, a party must make every effort to request and obtain a ruling before proceeding to trial.[33] For example, in *Coulson v. Marsh & McLennan, Inc.*,[34] a party requested a ruling on her motion on three separate occasions: in an opposition to a summary judgment motion, at an oral argument, and in a motion for reconsideration.[35] We concluded that the plaintiff had not waived her claim that the trial court failed to rule on her motion.[36]

Here, while Taylor objected to the lack of a panel report in his September 1996 motion to continue the trial, he failed to raise the issue again. In fact, a month before trial in May 1997 Taylor affirmatively requested that the trial proceed as scheduled: "As matters now stand, Taylor does not want to vacate the trial date." Because Taylor proceeded to trial without a ruling and without requesting one, he cannot now object to the lack of such a ruling. Thus, although the trial court failed to rule on the panel-related motions, Taylor has waived his objection to that error.

## IV. CONCLUSION

Because the trial court correctly denied Taylor's motion to amend his complaint, because any error in the trial court's failure to rule on the motion to reopen discovery was harmless, and because the trial court properly proceeded to trial without a panel report, we AFFIRM.

EASTAUGH, Justice, not participating.

**33.** *See Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999) (party preserved issue by requesting a ruling on her motion on three occasions); *see also Russell v. State*, 934 P.2d 1335, 1340–41 (Alaska App.1997) (defendant did not preserve issue for appeal because he failed to object at trial or to remind the judge that he had yet to rule on a motion); *Marino v. State*, 934 P.2d 1321, 1327 (Alaska App.1997) (defendant could not raise issue on appeal be-

cause he chose to proceed to trial without seeking a ruling on his motion).

**34.** 973 P.2d 1142 (Alaska 1999).

**35.** *See id.* at 1146.

**36.** *See id.*