*Notice: This opinion is subject to correction before publication in the Pacific Reporter. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, DEPARTMENT OF HEALTH & SOCIAL SERVICES, | ) ) ) | Supreme Court No. S-18209 |
| Appellant, | ) ) ) | Alaska Workers' Compensation Appeals Commission No. 20-022 |
| v. | ) ) | O P I N I O N |
| JENNIFER D. WHITE and JOHN P. SHANNON, D.C., | ) ) ) | No. 7656 – May 19, 2023 |
| Appellees. | ) ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Robert Kutchin, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellant. John P. Shannon, D.C., pro se, Anchorage, Appellee. No appearance by Jennifer D. White, Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

WINFREE, Chief Justice.

## I. INTRODUCTION

Can one adjudicative agency refuse on jurisdictional grounds to consider a contested legal question ancillary to an issue arising within that agency's jurisdiction because the legislature gave a different agency authority over the contested legal issue? An employer disputed its liability under the Alaska Workers' Compensation Act for an injured employee's chiropractic care, alleging that the care provided was not

compensable because it was outside the scope of the chiropractor's license. The Alaska Workers' Compensation Board decided it did not have jurisdiction to determine the chiropractor's scope of practice because the legislature had granted that authority to the Alaska Board of Chiropractic Examiners (Chiropractic Board) and the relevant scope of practice statute was ambiguous. The Workers' Compensation Board determined that the care was reasonable and necessary, that the Chiropractic Board appeared to have approved the chiropractic care in dispute, and that payment should be made. The Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. The employer appeals, but we affirm the Commission's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Jennifer White was injured while working for Alaska Psychiatric Institute (API) in late 2018. Dr. John P. Shannon, Jr., a chiropractor, treated White for shoulder pain. His treatment included four injections into a shoulder muscle in December 2018 and January 2019, using a plant-based substance called Sarapin. Dr. Shannon submitted bills for the injections to API; it denied payment with an explanation of benefits form saying the injections were "outside the . . . scope of" Dr. Shannon's practice.

### B.    Proceedings

Dr. Shannon filed a workers' compensation claim seeking payment for the injections. API, represented by the Department of Law, responded by denying that "procedures performed beyond the scope of Dr. Shannon's chiropractic license are reasonable, necessary, or within the standard of care for chiropractic care as defined by Alaska [S]tatute[s]." API's assertion about the scope of chiropractic care was based in

part on arguments that statutes governing chiropractic practice did not permit chiropractors to use prescription drugs[1] and that Sarapin was a prescription drug.

Dr. Shannon requested a hearing and submitted several documents supporting his use of injectable Sarapin. He included a draft of a January 2017 position statement from the Chiropractic Board that was intended to "support" qualified chiropractic physicians' "use of injectable nutrients." The position statement suggested that "injectable nutrients" included "vitamins, minerals and homeopathic solutions" and relied on a provision in the chiropractic statute allowing chiropractors to use "chiropractic core methodology or . . . ancillary methodology" when treating a patient.[2] The position statement mentioned a disagreement between the Chiropractic Board and the Department of Law about chiropractic practice, describing 2013 testimony before the Chiropractic Board from an assistant attorney general "urg[ing] the Board to condemn the use of injectable nutrients because it was not part of Chiropractic 'core curriculum.' " The Chiropractic Board had disagreed, "maintain[ing] that the science of nutrition is part of the core curriculum training of Chiropractic Physicians, and the method of application [whether] oral, parenteral or injectable, is something a Chiropractic Physician may study and learn to provide safely to patients." The record indicates that the position statement about injectable nutrients was posted on the Chiropractic Board's website during the time Dr. Shannon treated White. The disagreement identified in the Position Statement continued during the litigation of Dr. Shannon's claim.

---

[1] *See* AS 08.20.100(b)(1) (authorizing treatment "by chiropractic core methodology or by ancillary methodology"); AS 08.20.900(3), (6) (defining "chiropractic" and "chiropractic core methodology").

[2] AS 08.20.100(b)(1); *see also* AS 08.20.900(1), (12) (defining "ancillary methodology" and "physiological therapeutics").

Another of Dr. Shannon's supporting documents, a 2018 letter, contained the Chiropractic Board chair's opinion that "[c]hiropractic has long held the value of vitamins, minerals, herbs, homeopathics and other naturally occurring extracts and substances that do not require a [Drug Enforcement Agency] license are within the scope of chiropractic license." The letter stated that, in the Chiropractic Board's opinion, using injectable Sarapin was consistent with the governing statutes and within the scope of chiropractic practice when a chiropractor had "appropriate training." The Board chair also wrote that he found Dr. Shannon to be "exquisitely trained" in the relevant areas after reviewing Dr. Shannon's curriculum vitae. Finally, Dr. Shannon submitted a 2006 letter to a workers' compensation adjuster in which the Chiropractic Board's Secretary informed the adjuster that "during the April 14, 2006 meeting" the Chiropractic Board found no statutes or regulations that "would prohibit utilizing injectable nutriceuticals in chiropractic practice."[3]

API opposed setting a hearing on Dr. Shannon's claim because it wanted more time to obtain information for its defense. API sought discovery from Dr. Shannon, and API's Department of Law attorney filed a complaint with the Department of Commerce's investigation unit alleging that Dr. Shannon did not have a license "to obtain, prescribe, or administer prescription medications" and that Sarapin was "a prescription-only substance." At about this time Dr. Shannon filed a second claim, asking the Workers' Compensation Board to decide whether it had the "authority to determine 'scope of practice' of Chiropractic Physicians." Dr. Shannon also objected to some of API's discovery requests, and API sought to compel responses.

---

[3] According to a medical dictionary, a "nutriceutical" is "[o]ne of a class of agents advertised as having nutritional value as well as having an effect on biologic functions." *Nutriceutical*, STEDMAN'S MEDICAL DICTIONARY, Westlaw (database updated Nov. 2014).

During the course of the litigation API submitted multiple documents to support its position about the scope of chiropractic practice, including copies of some Chiropractic Board meeting minutes that postdated White's treatment. API's documentary evidence, like Dr. Shannon's, suggested the Chiropractic Board and the Department of Law, which was providing legal advice to the Chiropractic Board, had different opinions about the statutory scope of chiropractic practice. Draft minutes from a 2019 meeting reflected that the Chiropractic Board voted "to remove the board's position statement on injectable nutrients, citing advice from the Department of Law." In contrast, the Chiropractic Board took no action when staff from the Department of Commerce "reminded the board" that its chair "had written a letter . . . in support of a chiropractor who had been using billing codes for injectable nutrients, and that they may want to write a retraction." Minutes of other meetings documented that the Chiropractic Board, with some assistance from Department of Commerce staff, engaged in a regulations-revision process that would have modified the regulatory definition of "prescription drug."[4] But a Department of Law regulations attorney thought the revised definition was not authorized by the chiropractic statute and did not forward the regulation to the Lieutenant Governor for inclusion in the Alaska Administrative Code.[5]

After the Workers' Compensation Board set a hearing date on Dr. Shannon's claims, API asked to delay proceedings "until organizations with more expertise in chiropractic medicine, the Alaska fee schedule, and the practice of medicine in Alaska provide additional guidance," which API suggested would be available after

---

[4] Alaska Statute 08.20.900 does not define "prescription drug." API relies on a regulatory definition. 12 Alaska Administrative Code (AAC) 16.990(b)(1) (2023).

[5] *See* AS 44.62.125 (setting out role of regulations attorney); AS 44.62.060(c) (requiring Department of Law approval before lieutenant governor may accept regulation for filing).

a few months' delay. API told the Board that the "precise issue" presented in White's case was "currently under review by the Alaska Board of Chiropractic Examiners, the Alaska Workers' Compensation Medical Services Rule Committee . . . , and the Alaska State Medical Board." API also submitted a copy of the complaint against Dr. Shannon that its Department of Law attorney had filed with the Department of Commerce's licensing investigation unit.

Dr. Shannon asked the Workers' Compensation Board to "dismiss" API's scope of practice defense after the Workers' Compensation Board decided in another case involving Dr. Shannon's use of Sarapin injections that it did "not have jurisdiction to determine issues regarding the scope of chiropractic care" because the legislature had delegated jurisdiction over the issue to the Chiropractic Board.[6] The Workers' Compensation Board later relied on this decision when refusing to compel Dr. Shannon to respond to API's discovery requests.

In October 2020 the Board held a hearing on Dr. Shannon's claims. Dr. Shannon again asked the Board to summarily reject API's defense, arguing that only the Chiropractic Board had jurisdiction to determine the scope of his practice. The Workers' Compensation Board told Dr. Shannon it would address jurisdiction in its decision.

API did not call or cross-examine any witnesses. It argued that the legislature alone determines the scope of chiropractic practice, so the question whether the Sarapin injections were within the scope of Dr. Shannon's practice should be determined by reference to the chiropractic statutes. API agreed that it would be "perfectly appropriate" for the Workers' Compensation Board to "consider[] the Board of Chiropractic Examiners' opinions, their minutes, [and] whatever statements they've made" when considering the statute's meaning. But API nonetheless contended that

---

[6]     *Sereyko v. Mun. of Anchorage*, AWCB Dec. No. 19-0084, 2019 WL 3814471, at *1, *7 (Aug. 8, 2019).

the Workers' Compensation Board should not limit itself to the Chiropractic Board's opinions because the Workers' Compensation Board was "responsible for making its own independent judgment [when] making a determination of compensability." API contended that the chiropractic statutes prohibited chiropractors from using any prescription drug, and it referred to the 2020 workers' compensation fee schedule,[7] "which expressly provided that providers can only be paid for service rendered within the scope of their license," to support its argument. API asserted that earlier fee schedules had similar principles.[8]

API argued that all injectable drugs are prescription drugs under federal law and thus the relevant Alaska Statutes prohibited Sarapin's use by chiropractors. Relying on a footnote in one of our decisions, API maintained that injections themselves were not within the scope of chiropractors' licenses because this footnote contained "a very flat statement . . . that injections require a prescription."[9] API concluded that our

---

[7] Workers' compensation medical fees are governed by a fee schedule. AS 23.30.097. The 2020 fee schedule, effective January 2020, included the following: "Fees for services performed outside a licensed medical provider's scope of practice as defined by Alaska's professional licensing laws and associated regulatory boards will not be reimbursable." ALASKA WORKERS' COMP. DIV., OFFICIAL ALASKA WORKERS' COMPENSATION MEDICAL FEE SCHEDULE 1 (2020). The 2018 and 2019 fee schedules had no similar provision. Both defined a "professional service" as "one that must be rendered by a physician or other certified or licensed provider as defined by the State of Alaska working within the scope of their licensure," but they did not link reimbursement to scope of practice questions. ALASKA WORKERS' COMP. DIV., OFFICIAL ALASKA WORKERS' COMPENSATION MEDICAL FEE SCHEDULE 2 (2019); ALASKA WORKERS' COMP. DIV., OFFICIAL ALASKA WORKERS' COMPENSATION MEDICAL FEE SCHEDULE 2 (2018).

[8] *Cf. supra* note 7.

[9] *See Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Com., Cmty. & Econ. Dev.*, 414 P.3d 630, 632 n.9 (Alaska 2018) (commenting in case involving validity of naturopath regulation that "[a]pparently injectable vitamins and minerals require a prescription").

decision "prohibits chiropractors from performing injections because they're prohibited from prescribing any drugs." API said the Chiropractic Board had "finally recognized" that using injections and prescription drugs were "well outside the scope of practice" because the Chiropractic Board had removed from its website the position paper supporting qualified chiropractic physicians' "use of injectable nutrients." According to API, there had been "no change of law," just the Chiropractic Board's acknowledgement that "these injections are outside the scope of practice." API asked the Workers' Compensation Board to consider the opinions of the Division of Corporations, Business & Professional Licensing, as well as the Department of Law, when interpreting the chiropractic statute.

Dr. Shannon testified that Sarapin was not a controlled substance and that he did not prescribe drugs. Instead, he said, he administered medications in his office. He testified that Sarapin was an all-natural substance and argued that its use was allowed because chiropractors can use nutritional substances. Dr. Shannon pointed out that the legislature granted authority to the Chiropractic Board to promulgate regulations, contending that this authority allowed the Chiropractic Board "to further define" the chiropractic statutes. He maintained that the Chiropractic Board had allowed the treatment he provided to White and that he had administered injections for 15 years without complaints. He contended that API's argument about office use of prescription medication was unduly narrow, giving examples of healthcare products he contended would be considered prescription medication under API's theory but were used by other healthcare professionals without prescribing authority, such as massage therapists and physical therapists. He asserted that states, not the federal government, regulate what healthcare providers can do within the scope of their licenses. Dr. Shannon maintained that the Chiropractic Board was the only agency that could decide whether he was operating outside the scope of his license. Dr. Shannon called White as a witness; she testified that she benefitted from Dr. Shannon's treatment.

The Workers' Compensation Board decided it did not have jurisdiction to determine the scope of practice issue because the chiropractic statute "specifically delegates issues regarding the scope of chiropractic care to the Chiropractic Board." The Workers' Compensation Board acknowledged that it "has some expertise [in] the provision of medical care to injured workers when the scope of a provider's practice is clear." But it found that the chiropractic statutes are "ambiguous," observing that the record reflected disputes as early as 2006 about "whether chiropractors can perform injections, and of what substances." The Workers' Compensation Board found that, during the time Dr. Shannon treated White, "the Alaska Division of Corporations, Business and Professional Licensing took the position that the injection of Sarapin was within the scope of chiropractic care" so that Dr. Shannon "had every reason to believe he was acting within a chiropractor's scope of practice" when he treated White. The Workers' Compensation Board did not consider the Alaska Medical Fee Schedule helpful "in determining a provider's scope of practice" because the applicable schedules merely stated "that the professional component of some services must be rendered by a provider working within the scope of their licensure." The Workers' Compensation Board thought API "could pursue a declaratory judgment action in superior court to construe the chiropractic statutes" if it wanted a legal ruling on the scope of practice question.

The Workers' Compensation Board then considered whether the treatments were reasonable and necessary, concluding that they were. Its decision was based on White's testimony; Dr. Shannon's testimony that Sarapin was "a natural, plant-based medication that avoids the potential problems of opioids"; and the 2018 letter from the Chiropractic Board chair to the effect that the treatment was within the scope of chiropractic practice and that Dr. Shannon was "well trained on the use of natural substances." After making its findings and conclusions, the Workers' Compensation Board granted Dr. Shannon's claims and ordered API to pay him for the injections in accordance with the fee schedule.

API appealed to the Commission, raising points related to both the Board's earlier discovery decision and its decision on the merits of Dr. Shannon's claims. The Commission affirmed both decisions. The Commission discussed two of our precedents related to medical licensure[10] in addition to the chiropractic statutes when deciding that the Workers' Compensation Board had appropriately declined to determine a chiropractor's scope of practice. The Commission observed that the legislature had "granted statutory authority to license chiropractors and to define the limits of chiropractic practice" within the statutory definitions to the Chiropractic Board. The Commission decided the Workers' Compensation Board had appropriately refused to determine the limits of chiropractic practice because that issue was "a question to be addressed by the [Chiropractic Board]." The Commission emphasized the impact that such determinations could have on healthcare providers: "If Dr. Shannon [were] operating outside the scope of his license, his license would be in jeopardy."

With respect to the Board's discovery order, the Commission set out alternative ways the Board could have dealt with the issue but concluded that the information API sought was relevant only to its theory about the scope of chiropractic practice. Because the Commission agreed with the Workers' Compensation Board's jurisdictional decision, it concluded the information API sought would not be relevant and affirmed the discovery decision. The Commission also affirmed the Board's decision that the treatments were compensable. It considered the evidence in the record suggesting that at the time Dr. Shannon treated White "it was the position of the [Chiropractic Board] that [the] injections were within the scope of chiropractic

---

[10] *Taylor v. Johnston*, 985 P.2d 460 (Alaska 1999); *Storrs v. State Med. Bd.*, 664 P.2d 547 (Alaska 1983).

practice." The Commission cited both the 2017 position statement about injectable nutrients and the Chiropractic Board chair's 2018 letter to support its conclusion.

API appeals.

## III. STANDARD OF REVIEW

"In an appeal from the Commission, we review the Commission's decision and not the Board's."[11] "We apply our independent judgment to questions of law that do not involve agency expertise, including issues of statutory interpretation."[12] "When we review the Commission's legal conclusions about the Board's exercise of discretion . . . , we . . . independently assess the Board's rulings and in so doing apply the appropriate standard of review."[13] "We will find an abuse of discretion when the decision on review is 'arbitrary, capricious, or manifestly unreasonable.' "[14]

## IV. DISCUSSION

### A. The Commission Correctly Decided That The Workers' Compensation Agencies Lacked Jurisdiction To Determine The Scope Of Practice Issue In This Case.

#### 1. The parties' arguments

API argues that the Commission erred in its jurisdictional determination because the workers' compensation agencies "have authority to apply statutes other than the Workers' Compensation Act" and have done so in the past. API maintains it

---

[11] *Mitchell v. United Parcel Serv.*, 498 P.3d 1029, 1039 (Alaska 2021) (quoting *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017)).

[12] *Vandenberg v. State, Dep't of Health & Soc. Servs.*, 371 P.3d 602, 606 (Alaska 2016) (quoting *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 343-44 (Alaska 2011)).

[13] *Mitchell*, 498 P.3d at 1039 (alterations in original) (quoting *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009)).

[14] *Id.* (quoting *Alaska State Comm'n for Hum. Rts. v. United Physical Therapy*, 484 P.3d 599, 605 (Alaska 2021)).

is simply asking the agencies to "apply a statute to decide whether someone was entitled to benefits," asserting that the chiropractic statute is so clear that the issue presented to the Workers' Compensation Board did not involve policy questions within the Chiropractic Board's expertise. As a result, it concludes, the workers' compensation agencies had jurisdiction to decide whether Dr. Shannon's treatment exceeded the scope of chiropractic practice and the agencies erred in deciding otherwise. API claims that any workers' compensation agency decision about the scope of chiropractic practice "would not be binding" on the Chiropractic Board and therefore would not interfere with the Chiropractic Board's regulation of chiropractic practice.

Dr. Shannon responds that the Commission's decision was correct because the scope of any healthcare provider's practice is an issue for that profession's licensing board. He argues that the Department of Law, through its representation of API, is attempting to use an "improper forum" to get a decision about the meaning of the chiropractic statute because it "does not like the Alaska Board of Chiropractic Examiners['] position/opinion on this matter." Dr. Shannon also maintains that API omitted key parts of the statutes governing chiropractors when making its argument about the statute's clarity and meaning.

### 2. Ambiguous chiropractic statutes

API's legal arguments ultimately depend on its assertions that relevant provisions of AS 08.20, the chapter of the Alaska Statutes governing chiropractors, are clear and unambiguous. While it contends the Workers' Compensation Board has broad authority to interpret all statutes, not just the Workers' Compensation Act, it describes the chiropractic statutes as "clear, leaving no room for policy judgments." We disagree with API's characterization of this statute. A statute is ambiguous when it "is

susceptible of two or more conflicting but reasonable meanings."[15]   The statutory provisions underlying the dispute over White's treatment meet this standard.[16]

The record shows a longstanding dispute between the Chiropractic Board and the Department of Law about the scope of chiropractic practice.  From the record we surmise that the disagreement arises from competing interpretations of the interaction between AS 08.20.100 and AS 08.20.900.  The Chiropractic Board has interpreted a provision allowing chiropractors to "treat the chiropractic condition of a patient by chiropractic core methodology or by ancillary methodology"[17] to mean that chiropractors who receive training in specific techniques beyond chiropractic core methodology may use those techniques as "ancillary methodology" because the statute lists "chiropractic core methodology" and "ancillary methodology" as alternative ways to treat a patient.  The Chiropractic Board also has relied on the statutory definition of "ancillary methodology," which allows "employing within the scope of chiropractic practice . . . those methods, procedures, modalities, . . . and measures commonly used by trained and licensed health care providers" when a chiropractor has "appropriate training and education."[18]  "Ancillary methodology" is further defined as "includ[ing] . . . physiological therapeutics,"[19] which is in turn defined as "the therapeutic application of forces that induce a physiologic response and use or allow the natural processes of the body to return to a more normal state of health; physiological

---

**15**     *State v. Andrews*, 707 P.2d 900, 908 (Alaska App. 1985), *aff'd* 723 P.2d 85 (Alaska 1986) (per curiam).

**16**     Ours is a legal determination, but we agree with the Workers' Compensation Board that the record supports the conclusion as well.

**17**     AS 08.20.100(b)(1).

**18**     AS 08.20.900(1).

**19**     AS 08.20.900(1)(A).

therapeutics encompasses the . . . treatment of disorders of the body, utilizing . . . trigger point therapy, and other forms of therapy."[20]

According to Chiropractic Board minutes, the Department of Law has taken the position that the phrase "within the scope of chiropractic practice" in the definition of "ancillary methodology" restricted the permissible methods to treatment of the subluxation complex and employment of "physiological therapeutic procedures." Its position was based in part on the following statutory definition of "chiropractic":

> the clinical science of human health and disease that focuses on the detection, correction, and prevention of the subluxation complex and the employment of physiological therapeutic procedures preparatory to and complementary with the correction of the subluxation complex for the purpose of enhancing the body's inherent recuperative powers, without the use of surgery or prescription drugs; the primary therapeutic vehicle of chiropractic is chiropractic adjustment.[21]

API's argument on appeal is limited to the contention that the definitions of "chiropractic" and "chiropractic core methodology"[22] do not allow use of prescription drugs.[23] API recognizes that "ancillary methodology" is ambiguous, but it echoes the Department of Law's position that "all limits on the scope of chiropractic necessarily limit ancillary methodology." Despite its agreement about some statutory ambiguity, API asks us "to save time and expense" and determine as a matter of law that the Sarapin injections were "illegal" and thus not compensable. We decline to do

---

[20]    AS 08.20.900(12).

[21]    AS 08.20.900(3).

[22]    AS 08.20.900(6) defines "chiropractic core methodology" as "the treatment and prevention of subluxation complex by chiropractic adjustment . . . ; chiropractic core methodology does not incorporate the use of prescription drugs."

[23]    Before the Workers' Compensation Board, API also took the position that the chiropractic statute prohibited any procedure that pierced a patient's skin. API does not make this assertion to us.

so because that would require us to construe an ambiguous statute in the context of a workers' compensation appeal, to which the Chiropractic Board is not a party, after the Commission refused on jurisdictional grounds to interpret the statute. The issue before us is that of agency jurisdiction, not the scope of chiropractic practice.

### 3. Competing agency jurisdiction

We have held that agency jurisdiction is derived from statutes and that agencies "must find within the statute the authority for the exercise of any power they claim."[24] While we agree with API that the Workers' Compensation Board is not limited to applying solely the Workers' Compensation Act when adjudicating workers' compensation claims, we disagree with API's assertion that we have recognized the Workers' Compensation Board's "broad power to interpret statutes" other than the Workers' Compensation Act regardless of context. The decisions API cites are not at all similar to this case, which involves interpretation of an ambiguous statute within another administrative agency's explicit jurisdiction without that agency's participation, coupled with evidence in the record showing disagreement between government agencies about the statute's meaning.[25] Applying a clear statute is different

---

[24] *McDaniel v. Cory*, 631 P.2d 82, 88 (Alaska 1981); *see also Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n*, 825 P.2d 867, 871 n.4 (Alaska 1992) (summarizing and applying factors from administrative law treatise to determine agency jurisdiction).

[25] *Cf. Harris v. Millennium Hotel*, AWCB Dec. No. 13-0028, 2013 WL 3367315, at *2 (June 28, 2013) (applying statutory definition to deny death benefits), *overruled by Harris v. Millennium Hotel*, 330 P.3d 330 (Alaska 2014); *In re Sherman*, AWCB Dec. No. 13-0009, 2013 WL 226972, at *8-10 (Jan. 18, 2013) (applying AS 32.06.306 to conclude that business was partnership and partners were liable); *Elkins v. Alaska Div. of Workers' Comp.*, AWCB Dec. No. 11-0024, 2011 WL 943716, at *42 (Mar. 15, 2011) (considering whether agency interpretation of Board's regulation was separate regulation under Administrative Procedure Act); *In re Johnson*, AWCB Dec. No. 10-0056, 2010 WL 1186498, at *7 (Mar. 25, 2010) (applying AS 32.06.306 to impose liability on partners); *Althouse v. Holland Am. Line/Westours*, AWCB Dec.

from interpreting the meaning of an ambiguous statute,[26] but API does not distinguish them.

One cited case, *Henry v. Engle*, required the Workers' Compensation Board to construe AS 33.30.191, about prisoner employment, when an uninsured employer of an inmate on work release contended this statute deprived the Workers' Compensation Board of jurisdiction over the inmate's claim against the uninsured employer.[27] In contrast to the case before us, the Department of Corrections was a party in *Henry*, was represented in the proceedings, and participated in the jurisdictional hearing; moreover, nothing in the *Henry* decision suggests there was any disagreement among State agencies about the statute's meaning.[28]

Because API's defense to compensability was related to the provider's scope of practice, it raised a question that touched the jurisdiction of distinct

---

No. 02-0134, 2002 WL 1738882, at *3, *5 (July 22, 2002) (deciding based on statutory language that UIM coverage is supplemental and therefore not "compensation" under AS 23.30.105); *Undt v. Matanuska-Susitna Borough*, AWCB Dec. No. 94-0207, 1994 WL 757844, at *3 (Aug. 24, 1994) (using definition of "municipality" in AS 29.71.800(13) to interpret AS 23.30.243(b)); *Stark v. Stark Lewis Co.*, AWCB Dec. No. 93-0111, 1993 WL 361423, at *5 (May 6, 1993) (deciding second independent medical evaluation fees not subject to competitive procurement law); *Nelson v. B & B Foodland*, AWCB Dec. No. 89-0163, 1989 WL 236331, at *2 (June 28, 1989) (applying AS 25.20.010 to determine that claimant was a minor).

[26] Black's Law Dictionary distinguishes between "application" of a statute, which involves "categoriz[ing] the legal facts at issue," *Application*, BLACK'S LAW DICTIONARY (11th ed. 2019), and "interpretation" of a statute, "[t]he ascertainment of a text's meaning." *Interpretation*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[27] AWCB Dec. No. 13-0051, 2013 WL 2144973, at *3 (May 13, 2013).

[28] *Id.* at *1, *3.

administrative agencies, each of which has limited jurisdiction.[29]   Two workers'

compensation agencies administer the Alaska Workers' Compensation Act;[30] their

jurisdiction includes resolving disputes about the compensability of medical care.[31] The

legislature empowered the Chiropractic Board to regulate Alaska chiropractors'

practice.[32]   All three agencies have the power to promulgate regulations[33] and to

adjudicate certain types of claims.[34]   The Workers' Compensation Board and the

Chiropractic Board are both subject to the administrative adjudication provisions of the

Alaska Administrative Procedure Act.[35]  And each agency's jurisdiction is limited by

the statutes establishing them because an agency's jurisdiction is derived from statute.[36]

The Workers' Compensation Act requires the Workers' Compensation

Board to determine the compensability of medical care when there is a dispute about

---

[29]      *See Alaska Pub. Int. Rsch. Grp. v. State*, 167 P.3d 27, 36 (Alaska 2007)
(identifying limited jurisdiction as factor in determining whether agency exercises
quasi-judicial rather than judicial authority).

[30]      AS 23.30.005, .008(a), .110; *see also Alaska Pub. Int. Rsch. Grp.*, 167
P.3d at 36 (describing limited jurisdiction of workers' compensation agencies).

[31]      AS 23.30.095.

[32]      AS 08.20.010-.020 (establishing Chiropractic Board and its membership);
AS 08.20.055 (authorizing Chiropractic Board to "adopt regulations necessary to
effect" statutes related to chiropractors); AS 08.20.170 (authorizing Chiropractic Board
discipline when licensee fails to comply with chiropractic statutes and regulations).

[33]      AS 23.30.005, .098 (Workers' Compensation Board); AS 23.30.008(c)
(Commission); AS 08.20.055 (Chiropractic Board).

[34]      AS 23.30.110 (outlining procedure on workers' compensation claims);
AS 23.30.008(a) (limiting Commission's jurisdiction); AS 08.20.170 (authorizing
Chiropractic Board to discipline licensee and requiring application of Alaska
Administrative Procedure Act to disciplinary proceedings).

[35]      AS 44.62.330(a)(1), (12).

[36]      *McDaniel v. Cory*, 631 P.2d 82, 88 (Alaska 1981).

the reasonableness or necessity of the specific care an injured employee receives.[37] This inquiry is usually resolved through consideration of medical opinions about the necessity or efficacy of the treatment.[38] For example, the Workers' Compensation Board may consider the acts of other agencies when making compensability determinations: we recently held that the Workers' Compensation Board could permissibly consider a federal Food and Drug Administration warning about the way a medical device was used when denying the compensability of surgery to implant that device.[39]

In contrast, the chiropractic statutes give the Chiropractic Board exclusive jurisdiction over chiropractic licensing.[40] As part of the Chiropractic Board's authority, it has promulgated regulations that more specifically delineate the chiropractic statutes, including acts that violate the statutory requirement that chiropractors meet "minimum professional standards" when caring for patients.[41] Among the acts listed in the regulations about professional standards is one related to "engaging in patient care

---

[37] *See* AS 23.30.095(a) (requiring employer to provide medical care); *cf. Phillip Weidner & Assocs., Inc. v. Hibdon*, 989 P.2d 727, 731 (Alaska 1999) (discussing standards for evaluating compensability of medical care).

[38] *See Hibdon*, 989 P.2d at 732 (setting out reasonableness standard and requiring medical opinions).

[39] *Mitchell v. United Parcel Serv.*, 498 P.3d 1029, 1045 (Alaska 2021). Similarly, the Workers' Compensation Board's 2020 medical fee schedule, which disallowed fees for services outside a provider's scope of practice, included consideration of regulatory boards' definitions related to scope of practice. *See supra* note 7.

[40] AS 08.20.100-.170; *see Taylor v. Johnston*, 985 P.2d 460, 465 (Alaska 1999) (recognizing exclusive jurisdiction of Medical Board over medical licenses).

[41] AS 08.20.170(a)(5); 12 AAC 16.920 (2019).

outside the scope of chiropractic practice,"[42] which is the very issue API brought before the Workers' Compensation Board.

API asked the Workers' Compensation Board to interpret the chiropractic statute in a way that was contrary to the Chiropractic Board's interpretation of that statute at the time Dr. Shannon treated White, informal as that interpretation may have been. It was undisputed that in December 2018 and January 2019 the Chiropractic Board's website had a position statement supporting properly trained chiropractic physicians' "use of injectable nutrients." In addition, Dr. Shannon provided the Workers' Compensation Board with a copy of a December 2018 letter from the Chiropractic Board chair explicitly stating the opinion that, with appropriate training, use of injectable Sarapin was "within the scope of chiropractic practice." On the other hand, API supplied the Workers' Compensation Board with copies of Chiropractic Board minutes documenting the disagreement between the Chiropractic Board and the Department of Law about the chiropractic statute's meaning. The workers' compensation agencies thus were presented with a question of statutory interpretation that could be relevant to an issue within their jurisdiction but touched the central authority of a different quasi-judicial agency. In light of the record in this case, the workers' compensation agencies appropriately recognized their limited jurisdiction and deferred to the Chiropractic Board.

API accepts that a licensing board has "exclusive authority to regulate" professionals within that licensing board's jurisdiction. It disavows asking the Workers' Compensation Board "to regulate chiropractors," but it acknowledges that any Commission decision about the scope of chiropractic practice would be precedent

---

[42]     12 AAC 16.920(a)(3).

for the workers' compensation agencies.[43]  The precedential nature of a Commission decision about the scope of chiropractic practice could result in the indirect regulation of that practice because any chiropractor treating injured workers would be affected by such a decision.  Under API's jurisdictional theory, chiropractors could have a different *lawful* scope of practice in workers' compensation cases than in their general practice, which would indirectly regulate chiropractic practice and influence the type of treatment chiropractors offered and provided to injured workers without regard to whether the treatment was reasonably necessary and beneficial.

Moreover, API does not discuss how other administrative agencies might interpret or apply Commission decisions about the scope of a provider's practice.  For example, the Alaska State Medical Board notified Dr. Shannon that it had received a complaint alleging he might be practicing medicine without a license due to the Sarapin injections; it sought a response from him about the complaint.  The Medical Board recognized that as long as Dr. Shannon was practicing within the scope of his chiropractic license he would not be practicing medicine without a license,[44] but the letter did not explain how the Medical Board would determine the scope of chiropractic practice.

We strongly disagree with API's assertion that the scope of practice question here did not implicate the Chiropractic Board's "technical expertise."  We have

---

[43]     AS 23.30.008(a) ("Unless reversed by the Alaska Supreme Court, decisions of the [C]ommission have the force of legal precedent."); *Alaska Pub. Int. Rsch. Grp. v. State*, 167 P.3d 27, 42, 45 (Alaska 2007) (construing AS 23.30.008(a) as meaning Commission decisions are precedential for the workers' compensation agencies).

[44]     *See* AS 08.64.170(a)(2) (excepting from unauthorized practice of medicine someone licensed "under another law of the state" who engages in a practice "authorized under that law").

previously recognized the exclusive authority healthcare licensing agencies have over their licensees; we also have recognized that this authority is tied to the expertise of the licensing board.[45] Four of the five Chiropractic Board members must be "licensed chiropractic physicians who have practiced chiropractic in this state."[46] The Chiropractic Board's composition is similar to the Medical Board's,[47] suggesting that the Chiropractic Board, like the Medical Board, is "equipped with the necessary . . . knowledge" to regulate chiropractic licensees.[48] Because a provider's scope of practice is inextricably intertwined with licensing, the workers' compensation agencies appropriately refused to construe the chiropractic statute here.

API's argument that the workers' compensation agencies can independently interpret any statute that might arise in a workers' compensation case opens a range of questions when applied to disputes about the scope of a healthcare provider's practice. Could the Workers' Compensation Board decide that care allowed under a licensing board regulation is not compensable if the Board interprets the licensing statute differently than the licensing board? Would the Workers' Compensation Board need to amend its regulations about parties to a workers' compensation case to ensure that a licensing board can participate in a workers' compensation claim when a party disputes whether a treatment is within a provider's

---

[45]   *Taylor v. Johnston*, 985 P.2d 460, 465-66 (Alaska 1999).

[46]   AS 08.20.020. The fifth member "shall be a person with no direct financial interest in the health care industry." *Id.*

[47]   The Medical Board is currently composed of five physicians licensed in Alaska, "one physician assistant licensed under AS 08.64.107, and two persons with no direct financial interest in the health care industry." AS 08.64.010.

[48]   *Taylor*, 985 P.2d at 465 (quoting *Storrs v. State Med. Bd.*, 664 P.2d 547, 554 (Alaska 1983)).

scope of practice, so that the licensing board can explain its interpretation of its own governing statute to the Workers' Compensation Board? [49]

We also share the Commission's concern that healthcare providers' licenses might be affected if the Workers' Compensation Board assumed jurisdiction over contested scope of practice issues. API's Department of Law attorney made a complaint to the Department of Commerce licensing investigation unit about the injections. Dr. Shannon was subsequently required to respond to two "informal investigation" inquiries, one related to the Chiropractic Board[50] and one to the Medical Board.[51] The record does not show any action beyond these informal investigations, but the Commission rightly noted the risk of discipline or license revocation if a healthcare provider were found by the workers' compensation agencies to be practicing outside the scope of the provider's license. Indeed, licensing boards' expertise and the exclusivity of their jurisdiction were reasons we refused to allow litigation about a medical license's validity in a tort case.[52]

API asserts that it "was left with no meaningful remedy" as a result of the Commission's decision "because the Commission did not explain how API could get

---

[49]     *See* 8 AAC 45.040(c)-(d) (2021) (allowing joinder of those who have a "right to relief" or "against whom a right to relief may exist").

[50]     Alaska Statute 08.20.170(a)(5) permits the Chiropractic Board to discipline a chiropractor who engages in care not in conformity with minimum professional standards. Chiropractic Board regulations include "engaging in patient care outside the scope of chiropractic practice" in "[c]onduct that does not conform to minimum professional standards." 12 AAC 16.920(a)(3) (2019).

[51]     *See* AS 08.64.170 (prohibiting practice of medicine without a license except that a person licensed under a different chapter of AS 08 "may engage in a practice that is authorized under that law"); AS 08.64.360 (making practicing medicine without a license misdemeanor).

[52]     *Taylor*, 985 P.2d at 465-66 (observing that legislature gave Medical Board "exclusive authority to grant or revoke [medical] licenses").

the Chiropractic Board to resolve this case." The Commission decision relied in part on *Taylor v. Johnston*, when we declined in tort litigation to "look behind" the Medical Board's decision to license a doctor, noting the tort litigant could have sought a stay in court so he could "apply to the licensing board for an action on [the doctor's] license or a declaration that [his] license was void."[53] Just as the Alaska Statutes grant the Medical Board exclusive jurisdiction over medical doctors' licensing, they give the Chiropractic Board exclusive jurisdiction over chiropractic licensing decisions. API could have asked the Workers' Compensation Board for a stay while it pursued a declaratory judgment action if it wanted a clear ruling about Dr. Shannon's scope of practice; API conceded at oral argument that a declaratory judgment action could be "a conceivable route" to resolution of the scope of practice issue.

API also does not explain what action it anticipated the Chiropractic Board would take "to resolve this case." All of the Chiropractic Board's actions both before this litigation and afterward suggest that the Chiropractic Board thought Dr. Shannon's treatments were within the scope of his license: in addition to the documents showing the Chiropractic Board's interpretation of the chiropractic statute, the Chiropractic Board took no action against Dr. Shannon's license after receiving API's complaint and did nothing when a Department of Commerce employee suggested writing a retraction to a letter "in support of a chiropractor who had been using billing codes for injectable nutrients."

In light of the legislature's explicit delegation of regulatory and adjudicatory authority over chiropractors to the Chiropractic Board and the uncontested evidence in the record that the Chiropractic Board had at least informally endorsed the treatment Dr. Shannon provided to White, we agree with the workers' compensation

---

[53]    *Id.*

agencies that they lacked jurisdiction to interpret the chiropractic statute to decide that the injections exceeded the scope of chiropractic licensure.

**B.    The Commission Correctly Concluded That The Board Did Not Abuse Its Discretion By Refusing To Compel Discovery And That Substantial Evidence In The Record Supported The Compensability Of The Medical Treatment.**

API argues that the Commission erred in affirming the Board's discovery order.  It asserts that the Commission's conclusion "was based solely on a fundamental misunderstanding of the [Workers' Compensation] Board's authority to apply statutes outside the Workers' Compensation Act."  Dr. Shannon asks us to affirm the Commission's decision because the discovery at issue was irrelevant to the issues over which the Workers' Compensation Board had jurisdiction.

The contested discovery was related to information about Sarapin.  Dr. Shannon objected to API's question asking him whether the substance he used in the injections was "prescription medicine" or a "prescription drug" and its request that he "provide a copy of the purchase invoice" for the substance or a photograph of the substance's label.  Dr. Shannon argued the information was not relevant to compensability.  The Commission decided the Board had not abused its discretion when it declined to compel discovery because the information API sought was related only to the legal question API raised about the scope of chiropractic practice, which was not within the Workers' Compensation Board's jurisdiction.

Because we agree with the Commission that the workers' compensation agencies lacked jurisdiction to determine the boundaries of chiropractic practice in the context of this case, we also agree with the Commission's discovery decision.  The Workers' Compensation Board is generally not bound by technical discovery rules,[54]

---

[54]    AS 23.30.135(a) (providing that Board "is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure");

but it does consider them.[55]  We have said that "relevance for purposes of discovery is broader than for purposes of trial,"[56] but discovery must always be "relevant to the subject matter involved in the pending action."[57]  API's discovery requests about Sarapin's status were relevant only if the Workers' Compensation Board decided to assume jurisdiction over API's statutory interpretation question:  API's theory is that all "ancillary methodology" is restricted by the statutory definition of "chiropractic," which it contends prohibits any use of prescription drugs.[58]  The Workers' Compensation Board did not have jurisdiction to decide this question, so the discovery was not relevant to issues within the Board's jurisdiction.

Similarly, API's only argument on appeal regarding compensability is related to its theory of the chiropractic statute's meaning.  Because API did not otherwise challenge the Commission's conclusion that the treatments were

---

8 AAC 45.054(b) (2021) (allowing Board to order discovery upon petition).  *But see* AS 23.30.115(a) (allowing witness testimony to "be taken by deposition or interrogatories according to the Rules of Civil Procedure); 8 AAC 45.054(a) (applying Alaska Rules of Civil Procedure to oral or written deposition testimony).

[55]     *E.g.*, *Adams v. O&M Enters.*, AWCB Dec. No. 14-0136, 2014 WL 5148610, at *5 (Oct. 9, 2014) (observing that Board relies on civil rules for guidance including discovery rules); *cf. Leigh v. Alaska Child.'s Servs.*, 467 P.3d 222, 229 (Alaska 2020) (construing "relative" in AS 23.30.107(a) as consistent with "relevant" in Rule 26(b)(1)).

[56]     *Lee v. State*, 141 P.3d 342, 347 (Alaska 2006) (quoting *Hazen v. Mun. of Anchorage*, 718 P.2d 456, 461 (Alaska 1986)).

[57]     Alaska R. Civ. P. 26(b)(1).

[58]     In AS 08.20.900(3), "chiropractic" is defined as "the clinical science of human health and disease that focuses on the detection, correction, and prevention of the subluxation complex and the employment of physiological therapeutic procedures preparatory to and complementary with the correction of the subluxation complex for the purpose of enhancing the body's inherent recuperative powers, without the use of surgery or prescription drugs; the primary therapeutic vehicle of chiropractic is chiropractic adjustment."

compensable, we affirm the Commission's decision that substantial evidence in the record supports the Workers' Compensation Board's decision about the compensability of the care Dr. Shannon provided to White.

## V.      CONCLUSION

We AFFIRM the Commission's decision.